Beverly J. OTTO, Individually and on Behalf of all Others Similarly Situated, Plaintiff,

v.

VARIABLE ANNUITY LIFE INSURANCE COMPANY, a Stock Life Insurance Company Organized Under the Laws of the State of Texas, Charles T. Bauer, Mortimer M. Caplin, Henry Chauncey, Harry C. Copeland, Jr., W. Thomas Fiquet, Frederick M. Glass, Grinnel Morris, Roy T. Parker, Jr., Robert S. Phillips, Michael E. Puyans, W. Dawson Sterling, Benjamin N. Woodson, Philip G. Davidson III, Andrew Delaney, Joe F. Flack, Richard H. Hanneman, Harold S. Hook, Marden Miller, John J. Plumb, George F. Reed, Robert L. Baldwin, Stephen D. Bickel, Terrence J. Conlan, Joe D. Heusi, John D. Hogan, William B. Pardue, William C. Phelps, Michael J. Poulos, Robert O. Purcifull, Diane G. D'Agostino, and Gregory C. Wilcox, Individually Variable Annuity Life Insurance Company Separate Account One, and American General Corporation, Defendants.

No. 82 C 4762.

United States District Court, N.D. Illinois, E.D.

April 11, 1985.

---

**6.** This order does not require the entry of any judgment by the Clerk of Court.

Frederic J. Otto, and Lowell H. Jacobson, James A. Brandvik, Craig E. Anderson and Herbert I. Rothbart, Chicago, Ill., for plaintiff.

Randall L. Mitchell, Deborah A. Devaney, Philip Fertik, Adams, Fox, Adelstein & Rosen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Beverly J. Otto ("Otto"), on behalf of herself and others similarly situated, brings this suit against the Variable Annuity Life Insurance Company ("VALIC") and certain affiliated companies and named directors of VALIC, alleging, *inter alia,* violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.;* the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.;* and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Otto essentially claims that the defendants have unlawfully failed to disclose to investors in VALIC's fixed annuity program the manner in which interest is calculated on their deposits, as well as the method by which investors can transfer their funds so as to maximize their rate of return. On March 15, 1984, the Court granted Otto's motion for class certification, permitting her to represent the class of all Illinois investors who participated in VALIC's fixed annuity program between October 17, 1975, and August 2, 1982. Presently before the Court is defendants' motion to strike and dismiss and for summary judgment. For the reasons set forth below, defendants' motion is granted.

## Count I

■ Defendants offer several reasons why the complaint's securities fraud count fails to state a claim upon which relief can be granted and why defendants are entitled to summary judgment on that count as a matter of law. We need address only one of these reasons, defendants' assertion that the fixed annuity is not a security.

Defendants argue that VALIC's fixed annuity is not within the scope of the Securities Exchange Act of 1934 because it falls into the statutory exemption for "any insurance or endowment policy or annuity contract or optional annuity contract" issued by a regulated insurance company. 15 U.S.C. § 77c(a)(8).[1] Otto, on the other hand, argues that VALIC's fixed annuity should be characterized as an "investment contract," one type of security defined in 15 U.S.C. § 78c(a)(10).[2] Although the term "investment contract" is a catch-all to bring within the securities acts various interests that have the functional attributes of stock and other formal securities but are not so denominated, *Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Co.,* 698 F.2d 320, 324 (7th Cir.1983), we agree with defendants that the fixed annuity is more properly viewed as an insurance product than as an investment contract.

1. Indeed, although the statute refers to insurance policies and annuities as "exempted securities," they are probably more accurately considered not to be securities at all. *See* H.R.Rep. No. 85, 73d Cong., 1st Sess. 15; 3 H. Bloomenthal, Securities and Federal Corporate Law § 2.08[1] (1984 rev.).

2. The "investment contract" provision is in fact the *only* part of the definition of "security" which arguably applies to this case. Section 78c(a)(10) provides:

> The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certifi-

cate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

The contract under which Otto and the other class members became participants is designed for annuity purchase plans adopted by public school systems and certain tax-exempt organizations pursuant to Section 403(b) of the Internal Revenue Code, 26 U.S.C. § 403(b). Under the contract's terms, participants may designate a portion of their salaries for deposit into either a variable or a fixed annuity account, and those amounts (up to a statutory maximum) are excluded from the participants' gross income for the year.

Since 1968, VALIC's *variable* annuity has been funded through Separate Account One, a diversified open-end management investment company registered under the Investment Company Act of 1940. Funds contributed by participants are segregated from VALIC's other assets and are invested primarily in a diversified portfolio of common stocks and other equity-type investments. The participants bear all the investment risks with this annuity; neither interest nor the principal contributed by the participants is guaranteed by the company. The participants' profits thus depend solely upon the expertise and investment success of those who invest the funds in the Separate Account.

The *fixed* annuity, the subject of this lawsuit, operates quite differently. Participants' contributions become a part of the company's general assets.[3] The stated primary objective of the fixed annuity is to provide insured retirement stability by long-term accumulation of funds through compound interest. VALIC bears the investment risk, because it guarantees the return of both principal and a minimum of 4% compound annual interest for the first ten years of participation and 3½% interest thereafter. Interest above the minimum level may be paid in the discretion of VALIC's board of directors.

Otto asserts that the status of VALIC's fixed annuity as a security is settled "beyond all question" by three cases: *SEC v. Variable Annuity Life Insurance Co. of America*, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959); *SEC v. United Benefit Life Insurance Co.*, 387 U.S. 202, 87 S.Ct. 1557, 18 L.Ed.2d 673 (1967); and *Peoria Union Stock Yards*. These cases do shed some light on this issue, but they do not support, much less compel, the conclusion Otto reaches.

The Supreme Court decided long ago that a *variable* annuity offered by VALIC was a security. *VALIC*, 359 U.S. at 71, 79 S.Ct. at 622.[4] In doing so, the Court distinguished traditional fixed annuities from the more recently evolved variable annuities. *Id.*, 359 U.S. at 69, 79 S.Ct. at 621. Unlike their predecessors, variable annuities were to be treated as securities rather than insurance products, in large part because they placed the entire investment risk on the annuitant. "For in common understanding 'insurance' involves a guarantee that at least some fraction of the benefits will be payable in fixed amounts." *Id.*, 359 U.S. at 71, 79 S.Ct. at 622.

The Supreme Court discussed the relationship between annuities and the federal securities laws further in *United Benefit*. That case involved a deferred, or optional, annuity plan called a "Flexible Fund Annuity" contract, under which the purchaser agreed to make certain annual contributions until a specified maturity date. The insurance company invested most of the Flexible Fund contributions in common stocks, with the object of producing capital gains as well as an interest return. "Instead of promising to the policyholder an accumulation to a fixed amount of savings at interest, the insurer promise[d] to serve as an investment agency and allow the policyholder to share in its investment ex-

---

**3.** As defendants point out, state insurance regulations strictly limit the types of investments which insurance companies can make. *See, e.g.*, Ill.Rev.Stat. ch. 73, ¶ 736 *et seq.* Therefore, the company's funds typically go into conservative debt-type securities, mortgages and bonds, with fixed rates of return.

**4.** We note once again that it is VALIC's fixed, and not variable, annuity which is at issue in this case. Otto occasionally blurs the distinctions between the two, both in the complaint and in her brief opposing defendants' motion.

perience." *United Benefit,* 387 U.S. 202, 208, 87 S.Ct. 1557, 1560. Upon maturity the purchaser could either withdraw his contributions, plus the earnings that had accumulated through the insurer's investment of those contributions, or use them to purchase an annuity from the company. Whatever his choice, the purchaser was guaranteed a low minimum value (with no interest component) at maturity.

The Court found that the accumulation portion of this annuity plan was an investment contract rather than an insurance product. Although the cash value guarantee reduced somewhat the investment risk of the purchaser, this was not enough. The Court stated that " '[t]he test ... is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect.' " *Id.,* 387 U.S. at 211, 87 S.Ct. at 1562, quoting *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 352–53, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943). The Flexible Fund was "considered to appeal to the purchaser not on the usual insurance basis of stability and security but on the prospect of 'growth' through sound investment management." *United Benefit,* 387 U.S. at 211, 87 S.Ct. at 1562. Given the plan's pitch to growth through professionally managed investment, the Court deemed it fair to apply the securities laws to it. *Id.*

VALIC's fixed annuity differs significantly from the plans in these two Supreme Court cases. VALIC bears the investment risk, guaranteeing the return of the participants' contributions plus interest. Moreover, the economic inducement of the fixed annuity is indeed the "usual insurance basis of stability and security" rather than growth through investment. The company's literature clearly emphasizes the different objectives of the variable and fixed annuities: the former is "long-term capital growth," which the latter is the more secure "long-term accumulation of funds for retirement through compound interest." *See, e.g.,* VALIC's *Owner's Manual,* Exhibit B to Otto's complaint. The stability of the fixed annuity was apparent to Otto, who stated that she chose this annuity instead of the variable annuity because she did not like "the fluctuating rates" and wanted "a more conservative investment." Otto deposition, p. 25.[5] Accordingly, VALIC's fixed annuity is distinguishable from the annuities which the Supreme Court has found to be within the reach of the securities laws.

Nor does the Seventh Circuit opinion in *Peoria Union Stock Yards* bolster Otto's claim that the fixed annuity should be treated like a security. That case dealt with a "group deposit administration annuity contract" sold by an insurance company to pension trustees. The insurance company guaranteed interest payments (at a rate declining from 7½% to 3½%) on contributions made during the first three years of the contract, but it made no guarantee on later contributions. *All* the contributions, however, were to be credited with whatever investment income the insurance company could realize, less certain modest administrative charges. Thus, the Seventh Circuit found that the insurance company bore even less of the investment risk than did the company in *United Benefit,* and that any profits of the enterprise were due solely to the investment efforts of the insurance company. *Peoria Union Stock Yards,* 698 F.2d at 325. This plan is thus distinguishable from VALIC's fixed annuity in the same way as the contracts in *VALIC* and *United Benefit*—"the insurance company is offering the pension plan a chance to share in the insurance company's investment experience." *Id.* VALIC offers this chance to its customers through the variable, not the fixed, annuity.

---

**5.** Otto asserts in her response brief that the guaranteed rates of interest were hardly enough to attract anyone to the contract and that the incentive was the discretionary interest payable. This assertion ignores the substantial pecuniary benefits of excluding the contribution amounts from gross income for tax purposes and is belied by Otto's stated aversion of "fluctuating rates" (the discretionary interest, of course, was just that—discretionary—and could be varied or omitted at any time).

Our decision that VALIC's fixed annuity is not a security is supported by the SEC's view that "neither the general account nor any interests therein are generally subject to the provisions of the 1933 or 1940 Acts...." [6] Although not controlling, the Commission's interpretation of the securities laws is entitled to considerable weight. *United States v. National Association of Securities Dealers, Inc.*, 422 U.S. 694, 718–19, 95 S.Ct. 2427, 2442, 45 L.Ed.2d 486 (1975).

Accordingly, we hold that Otto's securities fraud claim must fail because VALIC's fixed annuity is not a security.

## Count II

■ Defendants make a two-pronged attack on the complaint's ERISA count. First, they argue that ERISA does not cover VALIC's fixed annuity because the annuity is not "employer maintained"—and ERISA applies only to plans or funds "established or maintained by an employer." 29 U.S.C. §§ 1002(2)(A), 1003(a).[7] Second, defendants argue that even if the fixed annuity were considered to be "employer maintained," the annuity would be excluded from ERISA's coverage because Otto's employer is a governmental subdivision. 29 U.S.C. §§ 1002(32), 1003(b)(1). Defendants' first argument is persuasive.[8]

Both Otto and defendants agree that the school district does no more than: (1) permit annuity contractors to publicize their products to employees, and (2) collect and remit to contractors the contributions designated by participating employees. These minimal, ministerial activities do not render VALIC's fixed annuity plan one "established or maintained" by the school district.[9] VALIC's annuity therefore does not fall within the statutory definition of "employee pension benefit plan" or "employee benefit plan" and therefore is not covered by ERISA. The ERISA claims of Otto and all other members of the plaintiff class must be dismissed.[10]

## Count III

Otto alleges in Count III that each of the thirty-one individual and four corporate defendants have violated the civil RICO statute. She claims that the defendants went astray from 18 U.S.C. § 1962(c), which prohibits a person from conducting the affairs of an enterprise that is engaged in, or whose activities affect, interstate commerce through a "pattern of racketeering activity." Section 1961 defines a pattern of racketeering activity as at least two occurrences within ten years of any of several predicate offenses, including mail fraud, bribery and fraud in the sale of securities.

---

6. *See* letter of January 31, 1984, to VALIC from Thomas E. Neal, Assistant Chief of the SEC's Office of Insurance Products and Legal Compliance, attached to defendants' supporting brief.

7. Section 1002(2)(A) provides in pertinent part: "[T]he terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both...."

8. Most of Otto's response is devoted to defendants' second argument. In contending that no governmental exemption applies to VALIC's fixed annuity, Otto emphasizes the fact that the annuity plan is not established or maintained by her school district employer, but rather is formulated and completely controlled by VALIC. While this vitiates defendants' second argument, it strengthens their first.

9. This conclusion is in accord with a Department of Labor regulation, 29 C.F.R. § 2510.3–2(f), which explains that tax sheltered annuities

such as VALIC's shall not be deemed to be "established or maintained by an employer" when the employer's involvement is limited (as in this case). Otto's arguments that we should disregard this regulation are unconvincing.

10. After defendants filed the reply brief for their motion, Otto filed a motion seeking leave to add three additional persons as named plaintiffs in this action. Otto's motion was clearly a response to defendants' governmental exemption argument, as the three putative additional class representatives are employees of a private, non-governmental entity. However, their inclusion in this suit would have no effect—the ERISA claim is dismissed *not* because Otto's employer is a governmental subdivision, but because the annuity plan is not established or maintained by the employer (whether it be governmental or non-governmental). Accordingly, Otto's motion is denied.

The Seventh Circuit recently discussed the elements of a section 1962(c) claim in *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985):

> To allege a violation of section 1962(c), the plaintiff must allege that the defendant (1) was employed by or associated with (2) an enterprise engaged in, or the activities·of which affected, interstate or foreign commerce, and (3) that the person conducted or participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering activity.

*Id.*, 747 F.2d at 387. Defendants claim that Otto's allegations are deficient in various respects, requiring dismissal of the RICO count. We agree with at least two of defendants' arguments.

■ Defendants first argue that the RICO count is fatally defective because it fails to identify any "enterprise." Indeed, the complaint uses the term "enterprise" twice (in paragraphs 74 and 75), but nowhere explains what enterprise was involved. Otto's response brief does nothing to clear up matters; to the contrary, it simply states at different points that the enterprise *might* be VALIC or VAMCO or a board of directors or an association in fact of the individual defendants and "the corporation."[11]

■ To establish an enterprise, Otto must plead and prove that "the various associates function[ed] as a continuing unit" and that the enterprise existed "separate and apart from the pattern of activity in which it engage[d]." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). Moreover, the same individual or corporation may not be both the liable "person" and the "enterprise" under section 1962(c). *Haroco*, 747 F.2d at 400. Unless Otto specifies the enterprise involved in this case, it is impossible to determine if she has satisfied these other requirements as to each of the defendants. Accordingly, the RICO claim as

stated in Count III is insufficient. *E.g.*, *Bennett v. Berg*, 685 F.2d 1053, 1061–62 (8th Cir.1982), *aff'd in part and rev'd in part*, 710 F.2d 1361 (8th Cir.1983) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *see also Laterza v. American Broadcasting Co., Inc.*, 581 F.Supp. 408, 414 (S.D.N.Y.1984) (general assertion that combination of defendants constituted an "enterprise," without allegation as to continuity of structure or personnel, was insufficient).

■ Defendants also point out a second, perhaps greater deficiency—Otto's failure to specify each defendant's role in a "pattern of racketeering activity." The complaint refers to three kinds of predicate offenses which might be a part of such a pattern: mail fraud, wire fraud (which Otto incorrectly calls "false pretenses"), and violations of the federal securities laws. As explained above, Otto has failed to state a claim for any securities laws violation. Thus, to establish a pattern of racketeering activity, Otto must allege at least two instances of mail or wire fraud.

■ There is little doubt that Fed.R. Civ.P. 9(b), which requires that allegations of fraud specify "with particularity" the circumstances of the alleged fraud, applies to fraud allegations in civil RICO complaints. *Haroco*, 747 F.2d at 405. Defendants contend that Otto has not satisfied Rule 9(b) because she fails to identify any allegedly false documents and fails to specify how any of the defendants were involved in sending any documents. We disagree with defendants' first contention, as the complaint refers to (and attaches as exhibits) three specific "investment prospectuses, financial and interest statements." Complaint, paragraph 73(a). However, we do agree with defendants' second contention, that the complaint fails to sufficiently plead each defendant's respective involvement in any fraudulent activity. In fact, the complaint is devoid of *any* factual allegations concerning particular defendants. The complaint's conclusory allegations, which merely attribute fraudulent representations to thirty-five de-

---

**11.** It is not at all clear which corporation Otto means.

fendants collectively, are not specific enough to satisfy Rule 9(b). *Hudson v. LaRouche*, 579 F.Supp. 623, 628–29 (S.D.N.Y.1983); *D & G Enterprises v. Continental Illinois National Bank and Trust Company of Chicago*, 574 F.Supp. 263, 267 (N.D.Ill.1983). The inadequacy of the fraud allegations is especially great regarding the individual defendants, many of whom left VALIC before 1978 or joined VALIC after the purportedly fraudulent documents were issued. Accordingly, the complaint's RICO count is dismissed.

### Count IV

In Count IV, Otto alleges that all the defendants conspired to violate the Securities Exchange Act of 1934, ERISA and RICO, the same statutes on which she relies in Counts I, II and III. At a minimum, a conspiracy requires allegations and proof of one overt act by a defendant in furtherance of the conspiracy, and the assent of each defendant to the operation of the conspiracy. *United States v. Sutherland*, 656 F.2d 1181, 1186–87 n. 4 and 1193 (5th Cir. 1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). The defendants argue that Otto's allegations fail to meet even this minimum requirement. We agree.

It may be theoretically possible for defendants to have conspired to violate RICO or even the federal securities laws or ERISA (which, as explained above, defendants actually could not have violated).[12] However, general allegations of a conspiracy which are unsupported by facts are not enough to state a cause of action. *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1307 (D.Colo.1984). The allegations in Count IV are even sketchier than those in Count III, which we have found inadequate to state a RICO claim against any particular defendant. There are simply no facts alleged which permit a reasonable inference that the dozens of defendants, many of whom were no longer affiliated with VALIC when other defendants *began* their association with the company, ever assented to a con-

spiracy to violate various federal laws. Thus, Count IV fails to state a cause of action and must be dismissed.

### Counts V and VI

In Counts V and VI, Otto asserts two state law claims: breach of contract and common law fraud. Because the federal claims in Counts I through IV are all dismissed, there is no longer any basis for this Court to exercise pendent jurisdiction over the state law claims. *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1087 (7th Cir. 1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983). Therefore, these counts are dismissed as well.

Accordingly, defendants' motion to strike and dismiss and for summary judgment is granted. It is so ordered.

---

12. *See, e.g., United States v. Rose*, 590 F.2d 232, 235–36 (7th Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1978) (legal or factual impossibility of committing offense not a defense to conspiracy claim).