**MEDALLION TV ENTERPRISES, INC., et al., Plaintiffs,**

**v.**

**SELECTV OF CALIFORNIA, INC., et al., Defendants.**

No. CV 82–5195 PAR (MCx).

United States District Court, C.D. California.

Jan. 31, 1986.

Avery H. Einhorn, Flax and Rosenfeld, Beverly Hills, Cal., for plaintiffs.

Louis R. Miller, Wyman, Bautzer, Rothman, Kuchel & Silbert, Los Angeles, Cal., for defendants.

## AMENDED MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

Plaintiffs Medallion TV Enterprises, Inc. ("Medallion") and its owner, John Ettlinger, have brought this action against SelecTV of California ("SelecTV"), and its officers and directors James LeVitus, Lionel Schaen, and Richard Kulis for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(b), (c), (d), as well as for various state law claims. The Court has jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) and the doctrine of pendent jurisdiction.

Defendants move for summary judgment under Fed.R.Civ.P. 56, essentially asking the Court to reconsider its June 28, 1984 Memorandum Of Decision And Order ("Order") denying defendants' previous motion for summary judgment, in light of the United States Supreme Court's recent decision in *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and this Court's decision in *Allington v. Carpenter,* 619 F.Supp. 474 (C.D. Cal.1985). For the reasons stated below, defendants' motion is granted.

1. Defendants in their Motion for Summary Judgment rely exclusively on the Court's June 28, 1984 Order, arguing that even if the "predicate acts" regarding which this Court found genuine issues of material fact were to exist, they could not support judgment for plaintiffs as a matter of law. Plaintiffs, in their opposing papers, rely on the pleadings of this case and offer no new evidence to counter defendants'

## I. INTRODUCTION

To be liable under 18 U.S.C. § 1962(b), a defendant must (1) acquire or maintain (2) any interest in or control of any enterprise (3) through a "pattern" (4) of "racketeering activity." To be liable under Section 1962(c), a defendant must (1) participate (2) in the affairs of an "enterprise" (3) through a "pattern" (4) of "racketeering activity." In addition, Section 1962(d) renders a defendant liable for conspiring to violate Sections 1962(b) and 1962(c). "Racketeering activity" is defined as any act indictable under several provisions of Title 18 of the United States Code. 18 U.S.C. § 1961(1)(B). The acts, enumerated in the RICO Act, are commonly called "predicate acts" and include the conduct alleged by plaintiffs: mail fraud, 18 U.S.C. § 1341; wire fraud, *id.* § 1343; and interstate transportation of stolen property, *id.* § 2314.

The facts of this case, described in the Court's Order and not genuinely controverted by the parties in this motion,[1] are as follows. Plaintiffs and defendants sought to obtain the rights to and to telecast the heavyweight prizefight between Muhammed Ali and Trevor Berbick in the Bahamas on December 11, 1981. In September or October 1981, Ettlinger obtained from the fight promoter the right of first refusal for television rights to the fight. In early October, Ettlinger and the individual defendants, who controlled SelecTV, met to discuss the possibility of joining together to telecast the fight. Eventually, plaintiff Medallion and defendant SelecTV entered into a joint venture, called Medsel, to acquire and exploit the rights by selling the telecast to cable and pay television stations. The agreement was later reduced to writing.[2] In late October, Medsel ob-

Motion. They do contest the Court's reasoning regarding its finding of two issues that were without substantial controversy, but the Court, upon reviewing those objections, will let those findings stand. *See* note 4 *infra.*

2. The written agreement is dated October 27, 1981 (Defendants' January 7, 1984 Motion For Summary Judgment Ex. B).

tained the telecast rights from Sports Internationale, the Bahamian fight promoter. As part of the Medsel joint venture agreement, SelecTV agreed to sell the television rights to pay and cable television stations in the United States and Canada. Medallion assumed responsibility for selling telecast rights throughout the rest of the world.

Although SelecTV and Medallion attempted to sell the rights, the sales results were disappointing. Both SelecTV and Medallion lost money on the joint venture. On October 6, 1982, plaintiffs filed their Complaint, seeking to hold defendants responsible for their losses in the fight.

 In denying defendants' motion for summary judgment in its June 28, 1984 Order, the Court relied on pre-*Sedima* law that allowed a civil RICO claim to be based on two or more predicate acts, even if those predicate acts arose from the same criminal transaction. The Court found that there was a genuine controversy of fact regarding the existence of a scheme to defraud by defendants that resulted in the following predicate acts: wire fraud, in connection with telephone calls by Schaen to Ettlinger on October 8 and 9 regarding a face-to-face meeting at a restaurant to discuss entering into the venture, at which Schaen allegedly made fraudulent representations; mail fraud, in connection with Schaen's and LeVitus's causing Ettlinger to use the telephone on November 9 to transfer letters of credit from his Chicago bank to the Bahamas; and transportation of stolen property, also in connection with Schaen's and LeVitus's causing Ettlinger to make the transfer.[3] In addition, the Court specified two issues to be without substantial controversy. First, it found that an internal memorandum of November 30, 1981 from Schaen to LeVitus, which was mailed to Ettlinger and which allegedly contained misrepresentations of sales figures, was not mailed in furtherance of the scheme to defraud. Second, the Court ruled that phone calls and mailings by defendants to television stations in their sales efforts, including letters, contracts, and offers, were not made in furtherance of the scheme to defraud.[4]

---

**3.** The evidence is unclear as to whether the transfer of the letters of credit was accomplished in separate mailings. If this were the case, each separate mailing in furtherance of the alleged scheme to defraud by defendants would be a separate violation of the mail fraud statute. One may be convicted of mail fraud whether he uses the mails or causes use of the mails for purposes of executing the scheme to defraud. *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir.1980); *see also Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).

**4.** Plaintiffs argue that the Court "seriously misapprehended" these other acts in ruling that they were not predicate acts, and used incorrect legal analysis. The Court rejects plaintiffs' arguments.

First, plaintiffs attack the Court's finding that the internal memorandum was not part of the scheme to defraud because the letters of credit by that time were irrevocable. The letters being irrevocable, the alleged misrepresentation could not have altered plaintiffs' conduct; thus the misrepresentations could not have been material, precluding a finding of a violation of 18 U.S.C. § 1341. Plaintiffs note in their Opposition that the letters of credit, even if irrevocable, were payable only upon occurrence of the fight. They argue that if they had been aware of the true facts as to the lack of sales, they could have

cancelled the fight or enjoined it, thus precluding payment of the letters of credit.

The RICO statute, however, requires that a plaintiff demonstrate facts tantamount to "probable cause" sufficient to support an indictment against the defendant with reference to the predicate acts. *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 683 (N.D.Ga.1983); *Bache, Halsey, Stuart, Shields, Inc. v. Tracy Collins Bank & Trust Co.,* 558 F.Supp. 1042, 1045 (D.Utah 1983). In order for defendants' misrepresentations to be indictable, they must be material. *United States v. Halbert,* 640 F.2d 1000, 1007–08 (9th Cir.1981). Where there is no evidence showing that the alleged misrepresentations and non-disclosure could or would have made plaintiff change his conduct or course of dealing, there can be no fraud. *United States v. Ballard,* 663 F.2d 534, 541–42 (5th Cir.1981); *see also United States v. Halbert,* 712 F.2d 388, 390 (9th Cir. 1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). Plaintiffs' argument that they "could have" cancelled or enjoined the fight had they known the true state of sales is speculation, not evidence. It is uncertain, for example, how Medallion, which had television rights to the Ali-Berbick fight but was not its promoter nor the manager of either of the pugilists, would have had the power to cancel or enjoin the fight. Plaintiffs having produced no evidence that they had the ability to stop the

## II. LIABILITY UNDER 18 U.S.C. §§ 1962(b), (c)

Viewing the facts in the light most favorable to the plaintiffs in this motion for summary judgment, the following predicate acts may exist: the telephone calls on October 8 and 9, 1981 between Schaen and Ettlinger; and Ettlinger's transfer of the letters of credit on November 9 as a result of those conversations. In its previous Order, the Court relied on pre-*Sedima* law holding that the predicate acts alleged by plaintiffs, if proved, could support RICO liability. In light of *Sedima*, however, the Court concludes that the predicate acts, even if proved, could not support a finding of a "pattern" as required for liability under Section 1962(c).

### 1. *Enterprise.*

■ Plaintiffs allege that SelecTV and Medsel were both enterprises for the purposes of 18 U.S.C. §§ 1961(4), 1962(b), (c) (Complaint ¶¶ 26, 27). Defendants argues that plaintiffs cannot satisfy the "enterprise" requirement. Two elements are necessary to establish an "enterprise" under 18 U.S.C. §§ 1961(4), 1962(b), (c). First, there must be "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Second, the enterprise must have an existence separate and apart from the pattern of activity in which it engaged. *Id.; compare United States v. Tillett*, 763 F.2d 628, 632 (4th Cir.1985); *United States v. Riccobene*, 709 F.2d 214, 221–24 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.1982), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982) (a RICO enterprise must have " 'an ascertainable structure' distinct from that inherent in the conduct of a pattern of racketeering activity") *with United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Weinstein*, 762 F.2d 1522, 1536–37 (11th Cir. 1985) (upholding RICO's application to situations "where the enterprise [is], in effect, no more than the sum of the predicate racketeering acts").

■ In the instant case, defendant SelecTV cannot be the "enterprise" for purposes of RICO, since it cannot at the same time be the "person" sued under 18 U.S.C. §§ 1962(b), (c). *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *see also Bennett v. United States Trust Co.*, 770 F.2d 308, 314–15 (2d Cir.1985); *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 400–02 (7th Cir.1984), *aff'd per curiam*, 473 U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir.1982), *aff'd in part and rev'd in part on other grounds*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Willamette Savings & Loan v. Blake & Neal Finance Co.*, 577 F.Supp. 1415, 1426–27 (D.Ore.1984). Neither can Medallion argue that the culpable person in

fight had they known of the misrepresentations, the Court declines to revise its previous ruling. *See Ballard*, 663 F.2d at 541.

Second, plaintiffs argue that the Court wrongly analyzed the mailings and telephone calls to third parties in finding them "not false in and of themselves," thus ignoring its own dicta under *Bohonus*, 628 F.2d at 1173, and *Pereira*, 347 U.S. at 8, 74 S.Ct. at 362, that "[m]ailing of documents which are themselves innocent may still constitute the crime of mail fraud if the documents are mailed in execution of a scheme to defraud." The Court, however, based its finding on the facts that

[t]here is no evidence that these mailings and phone calls contained false or misleading statements. *Nor has any evidence or argument been advanced to show how these communications were made in furtherance of the scheme to defraud.* Indeed, these communications suggest that SelecTV attempted to sell the rights in fulfillment of its obligations under the joint venture agreement.

(Emphasis added). Plaintiffs still have not produced such evidence or argument, and the Court stands by its initial finding.

Even if the Court were to find that these acts were predicate acts, however, its analysis of the "pattern" element under Section 1962(c) would be unchanged, since those acts arose from the same allegedly criminal episode.

this case is not SelecTV but its individual officers, employees, or agents: LeVitus, Schaen, and Kulis. "These attempts at factual distinctions do not make any real difference since a corporation cannot operate except through its officers and agents." *Tarasi v. Dravo Corp.,* 613 F.Supp. 1235, 1237 (W.D.Pa. 1985). RICO's use of the term "enterprise" "was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit...." *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), *cited in Rae,* 725 F.2d at 481.

Nevertheless, plaintiffs could contend that Medsel' the joint enterprise entered into by Medallion and SelecTV to broadcast the Ali-Berbick fight, was the "enterprise" for purposes of RICO. Medsel is not a named defendant in this case. The facts indicate that it had an existence and purpose apart from those of the predciate acts alleged by plaintiffs; it was, in essence,

more than the sum of the predicate acts. The Court therefore assumes that the "enterprise" requirement of RICO is satisfied for purposes of this summary judgment motion.[5]

### 2. *Pattern.*

■ The October 8 and 9 telephone calls and November 9 transfer of the letters of credit satisfy 18 U.S.C. § 1961(5)'s threshold requirement that a "pattern" include at least two acts of racketeering activity. However, as the Supreme Court noted in *Sedima,* "proof of two acts of racketeering activity, without more, does not establish a pattern." *Sedima,* 105 S.Ct. at 3285 n. 14 (quoting 116 Cong.Rec. 18,940 (1970) (statement of Sen. McClellan). It is the factor of *"continuity plus relationship "* that combines to produce a pattern. *Id.* (quoting S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969) (emphasis in original) [hereinafter cited as S.Rep.]). Therefore the alleged predicate acts must show both "continuity" and "relatedness" to constitute a

---

**5.** Defendants also argue that plaintiffs cannot demonstrate that Medsel was an enterprise under Section 1962(b) because Medsel did not exist until October 27, 1981, *see* note 2 *supra,* —after the telephone calls between Schaen and Ettlinger, but before the transfer of the letters of credit. Thus, defendants argue, only one predicate act occurred during Medsel's existence and that is insufficient to create liability under Sections 1961(5) and 1962(b). Defendants claim that Section 1962(b) requires proof of the existence of the enterprise at the time of the unlawful acts. Nothing in the language of Section 1962(b) or the RICO legislative history, however, mandates such an interpretation. Section 1962(b), on its face, does not preclude the possibility that a RICO defendant can commit predicate acts so as to acquire an interest in an enterprise even though the enterprise does not exist all the time that the predicate acts are committed. Furthermore, the cases cited by defendants, *Otto v. Variable Annuity Life Insurance Co.,* 611 F.Supp. 83 (N.D.Ill.1985) and *United States v. Weisman,* 624 F.2d 1118 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), are inapposite. *Otto* merely adopted the Eighth Circuit view, also adopted by this Court, that a plaintiff "must plead and prove that 'the various associates function[ed] as a continuing unit' and that the enterprise existed 'separate and apart from the pattern of activity in which it engage[d].' " *Otto,* 611 F.Supp. at 89 (quoting *Turkette,* 452 U.S. at 583,

101 S.Ct. at 2529). *Weisman* stated in dicta that Section 1962(c) "is apparently inapplicable to acts of racketeering activity occurring before the creation or acquisition of an enterprise," but explicitly contrasted the language of that subsection, prohibiting a person from "conduct[ing] or participat[ing]" in the enterprise, to the different wording of Section 1962(a) and (b). *Weisman,* 624 F.2d at 1125 & n. 6.

In any case, when Medsel came into existence would be relevant only to the question of what acts of the defendants could be considered predicate acts for the purposes of Section 1962(c), not whether Medsel was an enterprise. While Medsel could not have existed at the time of the October 8 and 9 telephone calls between Schaen and Ettlinger about the proposed business meeting to discuss their joint venture, it was in existence by November 9, when Ettlinger transferred the letters of credit. Because the evidence is unclear as to whether these were separate mailings of the letters of credit, *see* note 3 *supra,* it is unclear whether there were two predicate acts occurring during Medsel's existence. Thus the Court declines to rule, for purposes of this summary judgment motion, that plaintiffs cannot meet the threshhold requirement under 18 U.S.C. § 1961(5) of showing two predicate acts for purposes of proving a "pattern" under 18 U.S.C. § 1962(c).

"pattern" under Section 1962. *See Sedima*, 105 S.Ct. at 3285 n. 14.

■ *Relatedness*. The relatedness of the predicate acts is established through proof of common perpetrators or victims, or similar purposes, results, or methods of commission. *Id.; see also United States v. Stofsky*, 409 F.Supp. 609, 614 (S.D.N.Y. 1973), *aff'd*, 527 F.2d 237 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *cf.* 18 U.S.C. § 3575(e) ("criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events"). Here, the participants (SelecTV, Schaen and LeVitus) were the same, and the alleged acts of wire and mail fraud and transportation of stolen monies had the same victims. Moreover, the acts had the same purpose: To cause Ettlinger to transfer letters of credit in order to finance the telecasting of the Ali-Berbick match. With the same perpetrators, the same victims, the same methods of commission, and the same motive, the acts clearly were not disconnected but were parts of a single scheme.

■ *Continuity*. Plaintiffs must allege that the predicate acts occurred in different criminal episodes in order to show *continuity* of racketeering activity. *See Sedima*, 105 S.Ct. at 3285 n. 14. The requirement that plaintiffs in a RICO action demonstrate that the predicate acts occurred in different criminal episodes is consistent with the connotation of multiple events implicit in the term "pattern" and, more importantly, is the only construction that gives meaning to Congress' intended rejection of RICO liability predicated upon isolated or sporadic criminal acts. *See* ABA Section of Corporation, Banking & Business Law, Report of the Ad Hoc Civil RICO Task Force 203–08 (1985) (" 'pattern' requirement was intended as a means of limiting RICO to those cases where the required predicate offenses were committed in a manner which characterizes the perpe-

trator as a person who commonly commits such crimes. Only by requiring multiple predicate offenses occurring in two or more separate criminal episodes, can this goal be achieved in the RICO statute."). RICO is "not aimed at the isolated offender." *Sedima*, 105 S.Ct. at 3285 n. 14 (quoting 116 Cong.Rec. 35193 (1970) (statement of Rep. Poff)). As the report of the Senate Committee on the Judiciary explained:

> The concept of 'pattern' is essential to the operation of the statute. One isolated 'racketeering activity' was thought insufficient to trigger the remedies provided ... largely because the net would be too large and the remedies disproportionate to the gravity of the offense. The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce the pattern.

S.Rep. at 158, *quoted in Sedima*, 105 S.Ct. at 3285 n. 14.

In *Northwest Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828, 832 (N.D.Ill. 1985), for example, the district court held that a complaint alleging two predicate acts occurring within a month failed to state a claim under RICO because such acts did not constitute a "pattern." *Id.* at 833. Even if three more acts alleged in the complaint and occurring 7 and 10 months after the first two were proved to be predicate acts, the five acts would not show a "pattern" because "[t]hey still implemented the *same* fraudulent scheme as the first two mailings—and the single scheme does not appear to represent the necessary 'pattern of racketeering activity.' " *Id.* "It is difficult," the court said, "to see how the threat of continuing activity stressed in the Senate Report could be established by a single criminal episode." *Id.* at 832. The word "pattern"

> connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity*, not

merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'

*Id.* at 831 (emphasis in original). In *United States v. Moeller*, 402 F.Supp. 49, 57–58 (D.Conn.1975), the district court noted:

While the statutory definition makes clear that a pattern can consist of only two acts, ... the common sense interpretation of the word 'pattern' implies acts occurring in *different criminal episodes,* episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity.... [T]he normal canon of narrowly construing penal statutes points toward such an interpretation.

Finally, in *Exeter Towers Associates v. Bowditch*, 604 F.Supp. 1547, 1554 (D.Mass. 1985), an action by a limited partnership against the general partners regarding a mortgage transaction, the district court held:

[T]he connotations of a 'pattern of racketeering activity,' as that phrase is used in the RICO statute, are not satisfied by proof that, in effectuating the purchase of a single mortgage, the defendants committed two or more predicate acts of mail fraud. To construe the statute as applying in these circumstances would be to give it a sweep so broad as to be inconsistent with manifested congressional objectives. Most substantial business transactions involve two or more uses of the mail during negotiations. To hold that two such uses of the mail, in circumstances otherwise satisfying the prerequisites of proof of an offense under the mail fraud statute, are sufficient to constitute a 'pattern of racketeering activity' would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions.

 Consistent with this intent to exclude single criminal events, a "pattern" of racketeering activity must include racketeering acts sufficiently unconnected in time and substance to warrant consideration as separate criminal episodes. The key to demonstrating a "pattern" is not merely the number of predicate acts, or the time span in which they occur, *see Inryco*, 615 F.Supp. at 833, but also whether they relate to *separate* criminal episodes. In the instant case, all plaintiffs can prove at most is a series of acts occurring within a two-month period relating exclusively to the telecast of the boxing match: the two telephone calls setting up the conference between Schaen, LeVitus and Ettlinger; and Ettlinger's transfer of the letters of credit as a result of the meetings. Together the acts constitute a single criminal episode. They do not constitute a "pattern" of racketeering activity. Summary judgment is thus appropriate for defendants under plaintiff's cause of action for violation of 18 U.S.C. §§ 1962(b), (c).

### III. LIABILITY UNDER 18 U.S.C. § 1962(d)

Plaintiffs argue in their Opposition that even if their claims under Sections 1962(b) and (c) are dismissed, their claim under Section 1962(d) cannot be because a conspiracy to violate RICO does not require two predicate acts, or, indeed, any overt act at all. Section 1962(d) prohibits persons from "conspiring to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affair through a pattern of racketeering activity." *United States v. Carter*, 721 F.2d 1514, 1529 (11th Cir.1984). Plaintiffs rely on *United States v. Alonso*, 740 F.2d 862, 871–72 (11th Cir.1984) and *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984) for the proposition that liability under Section 1962(d) does not require a showing of two predicate acts or, indeed, *any* overt acts.

 These criminal prosecutions under RICO, however, are inapposite to the instant civil action. The private right of action under 18 U.S.C. § 1964(c) requires "injur[y] in [plaintiff's] business or property

by reason of a violation of section 1962"; that language presupposes an overt act. In *Alonso*, the Eleventh Circuit limited its holding to the assertion that *"conviction* of substantive RICO offenses is not an absolute prerequisite to conviction under the RICO conspiracy provisions." *Alonso*, 740 F.2d at 872 (emphasis added). The Eleventh Circuit in *Coia*, 719 F.2d at 1124, did hold that *proof* of an overt act was not necessary for conviction under Section 1962(d). The Court relied in part on *Singer v. United States*, 323 U.S. 338, 340–42, 65 S.Ct. 282, 283–84, 89 L.Ed. 285 (1945), in which the Supreme Court concluded that because the particular conspiracy statute it was construing did not on its face require an overt act, no overt act requirement would be implied. The statute before the Supreme Court thus "punishe[d] conspiracy 'on the common law footing.'" *Id.* at 340, 65 S.Ct. at 283 (quoting *Nash v. United States*, 229 U.S. 373, 378, 33 S.Ct. 780, 782, 57 L.Ed. 1232 (1913)). *Alonso* and *Coia* are not inconsistent with the federal common law of conspiracy, under which "[c]onspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." *United States v. Rodriguez*, 546 F.2d 302, 306 (9th Cir.1976). The crime of conspiracy and the subsequent commission of the crime that is the object of the conspiracy may be prosecuted and punished as two separate crimes. The underlying rationale is that the conspiracy "poses distinct dangers quite apart from those of the substantive offense": namely, the combination of persons to achieve unlawful ends, making it more likely that more complex and far-reaching crimes will be committed and less likely that individuals will abandon the criminal enterprise. *Iannelli v. United States*, 420 U.S. 770, 777–79, 95 S.Ct. 1284, 1289–91, 43 L.Ed.2d 616 (1975). "[C]ollective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961).

In contrast to criminal conspiracy, which may be prosecuted and punished as a crime in itself because of the harm it poses to the public, a civil conspiracy under common law gives a plaintiff a cause of action only by virtue of the harm that conspiracy causes him individually. "Unlike a criminal conspiracy, where the conspiracy itself forms the gist of the crime, in a civil conspiracy, it is the overt acts producing damage to the plaintiff that gives rise to liability." *Kajtazi v. Kajtazi*, 488 F.Supp. 15, 21 (E.D.N.Y.1978); *see also Pacific Telephone & Telegraph Co. v. MCI Telecommunications Corp.*, 649 F.2d 1315, 1319 (9th Cir.1981) (under California law, civil conspiracy, "[u]nlike its criminal counterpart, ... in order to be actionable requires [an] independently wrongful act and resulting damages"); *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 494 F.Supp. 1139, 1160 (D.Del.1980) ("A civil conspiracy cannot be established by proof of a conspiracy alone. The existence of a conspiracy desgined to injure a plaintiff provides him with no cause of action. A conspirator's liability must be based upon overt acts done pursuant to the conspiracy"). Thus, in order for a plaintiff to have a private cause of action under 18 U.S.C. § 1962(d), there must at the very least be one or more overt acts causing injury to the plaintiff or "his business or property" under 18 U.S.C. § 1964(c).

This conclusion is supported by RICO's legislative history. RICO's two predecessor bills, S. 2048 and S. 2049, introduced in the Senate by Senator Hruska in 1967 (parallel bills were introduced by Representative Poff in the House) sought to apply antitrust theories to the problem of combatting organized crime's infiltration of legitimate business. Indeed, S. 2048 was framed as an amendment to the Sherman Act that would prohibit investment of unreported income from one line of business into another. Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 249–54 (1982). Congress took no action on the proposed bills.

In January 1969, Senator McClellan introduced S. 30, the Organized Crime Con-

trol Act. While the bill did not contain a RICO provision, Senator McClellan later reviewed before the Senate the extent of organized crime in the United States and the need to combat it. 115 Cong.Rec. 5872 (1969). On March 20, 1969, Senator Hruska introduced S. 1623, the Criminal Activities Profits Act, which, he explained, were a synthesis of the two bills he had introduced earlier. Although Senator Hruska no longer proposed coupling the bills with existing antitrust statutes, instead intending that the bills become part of the United States criminal code, he continued to speak of the proposed laws in antitrust terms:

[The bill] attacks the economic power of organized crime and its exercise of unfair competition with honest businessmen on two fronts—criminal and civil.

The criminal provisions of the bill prohibit the investment, in any business which is conducted in or which affects interstate commerce, of income which either has not been reported for Federal income tax purposes or has been derived from carrying on certain specified criminal activities.

. . . . .

In addition to this criminal provision, the bill also creates civil remedies for the honest businessman who has been damaged by unfair competition from the racketeer businessman. Despite the willingness of courts to apply the Sherman Anti-Trust Act to organized crime activities, as a practical matter the legitimate businessman does not have adequate civil remedies available under the act. This bill fills that gap. Patterned closely after the Sherman Act, it provides for private treble damage suits, prospective injunctive relief, unlimited discovery procedures and all the other devices which bring to bear the full panoply of our antitrust machinery in aid of the businessman competing with organized crime.

*Id.* at 6993. "Standing alone, the criminal provisions may not be necessary," Senator Hruska said. "In fact, the criminal provisions are intended primarily as an adjunct

to the civil provisions which I consider as the more important feature of the bill." *Id.* After several days of hearings on S. 30 and S. 1623, Senators McClellan and Hruska jointly introduced S. 1861, the Corrupt Organizations Act, which ultimately became Title IX of the Organized Crime Control Act of 1969, RICO's immediate predecessor. For the first time, the proposed bill spoke in terms of a "pattern" of racketeering activity and an "enterprise." *Id.* at 9569. Three proposed provisions closely tracked the present language of 18 U.S.C. §§ 1962(a), (b)(c). *Id.* There was, however, no provision prohibiting a conspiracy to violate the provisions of the bill; nor was there a private treble damage remedy. *Id.* Nevertheless, the bill, Senator McClellan stated, "dr[ew] heavily upon the remedies developed in the field of antitrust." *Id.* at 9567. The bill was referred to the Senate Committee on the Judiciary on April 18, 1969. *Id.* at 9568.

In December 1969, the Senate Judiciary Committee reported on S. 30 as amended by S.1861. Blakey, *supra*, at 265–70. For the first time, the proposed bill contained the anti-conspiracy provision of Section 1962(d); it did not, however, contain a private right of action for treble damages. 116 Cong.Rec. 581 (1970). Nevertheless, the Committee believed the civil remedies then included were adequate:

There is no doubt that the common law criminal trial, hedged in as it is by necessary restrictions on arbitrary governmental power to protect individual rights, is a relatively ineffectual tool to implement economic policy. It must be frankly recognized, moreover, that the infiltration of legitimate organizations by organized crime presents more than a problem in the administration of criminal justice. What is ultimately at stake is not only the security of individuals and their property, but also the viability of our free enterprise system itself. The committee feels, therefore, that much can be accomplished here by adapting the civil remedies developed in the antitrust field to the problem of organized crime.

S.Rep. at 80–81. RICO thus "brings to bear on the infiltration of organized crime into legitimate business or other organizations the full panoply of civil remedies, including a civil investigative demand, now available in the antitrust area." *Id.* at 81. Yet the Senate Report coupled this analysis with the proviso that the "pattern" element was essential to the statute in that one isolated episode of racketeering activity was insufficient to trigger the provisions of the bill "because the net would be too large and the remedies disproportionate to the gravity of the offense." *Id.* at 158. Infiltration of legitimate business normally required more than one racketeering activity "and the threat of continuing activity" to be effective. "It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* The bill, still without a private action for treble damages, passed on January 23, 1970. 116 Cong.Rec. 972 (1970).

S. 30 was referred to the Committee on the Judiciary of the House of Representatives on January 26, 1970, *id.* at 1103; two bills paralleling the Title IX RICO provision of S. 30, H.R. 19215 and H.R. 19586, were introduced in the House. *Id.* at 31914, 35242. The House passed an amended version of S. 30 with Sections 1962(a), (b), (c), and (d) unchanged; the definition of "pattern" intact except for the fact that the House version required the two predicate acts making up the "pattern" to be committed within ten years of each other; and a new private right of action for treble damages under Section 1964(c). *Id.* at 35340–41, 35363. The Senate passed the House version with no changes. Blakey, *supra,* at 279–80.

Thus while the criminal provisions of RICO *on their face* require no overt act for there to be a conspiracy under 18 U.S.C. § 1962(d), since under common law the conspiracy in itself is sufficient to confer such liability, the House addition of a private right of action for treble damages for violation of Section 1962 is entirely statutory and must be read in light of the House's and Senate's use of existing antitrust statutes as a model for RICO. The House, in adding Section 1964(c), was clearly influenced by the private action for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, for the two statutes are very similar in language. Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, read together, give "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," including "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce," a private right of action for treble damages. The private right of action under RICO, 18 U.S.C. § 1964(c), is phrased in similar terms, referring to "[a]ny person injured in his business or property by reason of a violation of section 1962."

The Clayton Act provides a private cause of action for persons harmed by the anti-competitive acts resulting from the conspiracy and tracks the common law of civil conspiracy. But a mere conspiracy to violate antitrust laws, without more, does not give a plaintiff a cause of action under the Clayton Act. "[R]ecovery for a statutory violation is not based on the conspiracy itself but on injury to the plaintiff produced by specific overt acts pursuant to the conspiracy." *Winckler & Smith Citrus Products Co. v. Sunkist Growers, Inc.* 346 F.2d 1012, 1014 n. 1 (9th Cir.), *cert. denied,* 382 U.S. 958, 86 S.Ct. 433, 15 L.Ed.2d 362 (1965); *see also Pocahontas Supreme Coal Co. v. National Mines Corp.,* 90 F.R.D. 67, 74 (S.D.N.Y.1981). A plaintiff who fails to show that he was injured in his business or property by the alleged conspiracy has no standing to sue for violation of the antitrust laws. *Davies v. Carnation Co.,* 352 F.2d 393, 396–97 (9th Cir.1965). The provision for a private right of action for treble damages under RICO—a provision whose wording tracks that of Section 4 of the Clayton Act, contained in a statute modeled after the antitrust laws in general—must be read in the same way. Without overt acts causing injury, there is no cause of action under 18 U.S.C. § 1964(c) for violation of 18 U.S.C. § 1962(d). *Cf. Sedima,*

105 S.Ct. at 3286 (holding that injury by reason of a Section 1962(c) violation requires only harm caused by the predicate acts forming the pattern in order for there to be standing under Section 1964(c).

 Plaintiffs argue, in the alternative, that Section 1964(c), read in conjunction with Section 1962(d), requires only injury caused by the conspiracy, not injury caused by a pattern of racketeering activity resulting from the conspiracy.[6] Under this theory, injury caused by overt acts resulting from the conspiracy creates a cause of action even though those overt acts do not make up a "pattern." While it is true that under the Clayton act a plaintiff need be harmed by only one overt act in order to have a cause of action, and RICO on its face provides a private cause of action to a person "harmed" by a violation of Section 1962(d), Sections 1962(d) and 1964(c) together must be read in light of the Senate Judiciary Committee's special emphasis on the "pattern" requirement. This was in the same Senate Report that added the conspiracy provision to RICO. Assuming *arguendo* that plaintiffs are correct in asserting that a private cause of action lies under Section 1962(d) even if only one overt act harms the plaintiff, that contention would not get plaintiffs past the second step of the analysis: That defendants "conspire[d]" under Section 1962(d) to *violate* Sections 1962(b) and (c). These sections, read together, require that the defendant "conspire" to "acquire or maintain ... any interest in or control of any enterprise" through a "pattern of racketeering activity" or that he "conspire" to "participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." The evidence in this case, however, suggests that any "conspiracy" on the part of defendants extended to the single Medsel episode and did not contemplate separate criminal episodes that would constitute a "pattern" within the meaning of RICO. Plainitffs have produced no evidence, and the Court can discern none, raising a genuine issue of fact that defendants conspired to engage in a "pattern" of racketeering activity, and plaintiffs cannot survive a motion for summary judgment based on what might be adduced at trial.[7] "It is not the intent of Rule 56 to preserve purely speculative issues of fact for trial...." *Exxon Corp. v. F.T.C.*, 663 F.2d 120, 128 (D.C.Cir. 1980); *see also Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

Summary judgment is thus appropriate under plaintiff's claim for violation of 18 U.S.C. § 1962(d).

## IV. PENDENT CLAIMS

Because defendants' motion for summary judgment against plaintiffs is granted, the Court has no pendent jurisdiction to hear plaintiffs' pendent state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The pendent state claims are thus dismissed without prejudice to the merits.

Accordingly, it is ordered that:

1. Defendants' motion for summary judgment against plaintiffs on plaintiffs' claims for violation of 18 U.S.C. §§ 1962(b), (c), (d) is granted;

2. Plaintiffs' pendent state claims are dismissed without prejudice.

---

6. Plaintiffs' counsel so asserted during oral argument on November 25, 1985.

7. Even if the Court were to hold that there could be civil liability for violation of 18 U.S.C. § 1962(d) absent proof that the defendants conspired to engage in a "pattern" of racketeering activity, it could not hold that plaintiffs would have such a cause of action in this case, since the only defendants are SelecTV and its officers. A corporation and its officers are not capable of a civil conspiracy for purposes of the RICO act.

*See, e.g., Yancoski v. E.F. Hutton & Co.*, 581 F.Supp. 88, 97 (E.D.Pa.1983); *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 209 (E.D.Mich.1981); *see also Haddad v. Shell Oil Co.*, 423 F.Supp. 1384, 1388 (C.D.Cal.1976). *Cf. Webb v. Culberson, Heller & Norton, Inc.*, 357 F.Supp. 923, 924 (N.D.Miss.1973) (corporation can only act through its officers and representatives, who cannot conspire with corporation of which they are a part).