**NORTHERN TRUST BANK/O'HARE, N.A. as Trustee, etc., Plaintiff,**

v.

**INRYCO, INC., et al., Defendants.**

**No. 84 C 2077.**

United States District Court,
N.D. Illinois, E.D.

July 29, 1985.

---

Arthur T. Susman, Michael P. Myers, Joseph, Susman & Myers, Chicago, Ill., for plaintiff.

Stanley J. Parzen, Jonathan C. Medow, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Northern Trust Bank/O'Hare, N.A. as Trustee under Trust No. 74 L 214 ("Trustee") charges Inryco, Inc. ("Inryco") and others violated 18 U.S.C. §§ 1964(c) and (d) (part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 [1]), as well as state law, when they participated in a construction contract kickback scheme. Inryco now moves under Fed.R.Civ.P. ("Rule") 9(b), 12(b)(1) and 12(b)(6) to be dismissed from the Complaint. For the reasons stated in this memorandum opinion and order, the motion is granted.

*Facts* [2]

On October 22, 1979 Trustee contracted with Inryco for construction of a warehouse addition (the "Project") in Franklin Park, Illinois (Complaint ¶ 11(a) [3]). Inryco designated its employee Jerry Ranke ("Ranke") as Senior Project Manager in charge of construction (¶ 11(b)). Ranke's duties included soliciting bids from subcontractors and awarding subcontracts (¶ 3(b)).

Ranke and Inryco hired Century Concrete Construction Company ("Century") to

---

1. All further references to RICO provisions will simply take the form "Section—."

2. As always with respect to a motion to dismiss, the well-pleaded factual allegations of the Complaint are taken as true, with all reasonable factual inferences drawn in Trustee's favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th

Cir.1984). That approach of course involves no actual findings of fact. As the text discussion will reflect, the term "well-pleaded" deserves special attention here.

3. All further references to the Complaint will simply take the form "¶ —."

act as concrete subcontractor for the Project (¶ 11(c)). Ranke then worked out a kickback scheme with Century and its President Nat D'Angelo ("D'Angelo"). That scheme was implemented through a number of payments:

1. On November 19, 1979 Ranke issued a phony work order to Century in the amount of $35,049 (¶ 14(a)). Inryco released funds in that amount to Century, but Century never performed the specified work. On December 20 Century issued a $35,049 check to Ranke under the alias Tom Mann. Ranke converted the funds to his own use through a bank account he had established under the Mann name at First Bank and Trust Company of Palatine ("Palatine Bank") (¶¶ 12(a), 14(c)).

2. Century and D'Angelo later funneled three more kickbacks to Ranke (¶ 15):

| | | |
|---|---|---|
| (a) July 1, 1980 | — | $190,000 |
| (b) October 27, 1980 | — | 20,840 |
| (c) October 27, 1980 | — | 18,939 |

Each of those payments also took the form of a Century check made out to Mann and deposited in the Palatine Bank account (*id.*).

Century did not perform its work in accordance with the Project specifications (¶ 19(b)). Much of the concrete work was performed in an unworkmanlike manner (*id.*). Trustee charges Ranke is responsible for the defects because he either failed adequately to supervise the work or knowingly permitted Century to perform it in an unsatisfactory manner. Trustee alleges no other injury.

### Inryco's Contentions

In support of its motion Inryco asserts a congeries of flaws in the Complaint:

1. It fails to allege sufficient facts to permit a determination whether Trustee is the "real party in interest" (Rule 17(a)) and is hence the proper party to prosecute this action.

2. It alleges injuries not proximately caused by the claimed racketeering activity.

3. It improperly names Inryco as a RICO defendant, because Inryco was a *victim* of the fraud.

4. It fails to allege a proper "enterprise."

5. It fails properly to allege Inryco conspired to violate RICO.

6. It fails to set out the alleged fraudulent activity with the specificity required by Rule 9(b).

This opinion will not treat with the first of those issues, which is the subject of no more than a footnote in the current briefing (Inryco Mem. 3 n. *) and plainly requires more substantial treatment.[4] On the other hand, the Complaint's deficient allegations of a "pattern" of racketeering—which were not discussed at all in the parties' briefs[5]—are dispositive of Inryco's motion and mandate Inryco's dismissal from the Complaint.[6] Inryco's other

---

**4.** Trust No. 74 L 214 is obviously a conventional Illinois land trust (¶ 1(b) alleges Trustee sues "not individually but solely as trustee under certain trust agreement known as Trust No. 74L214," the telltale language found in land trust contracts). Trustee signed the Inryco contract (¶ 11(a)), though as in all land trust transactions the beneficial owners (those entitled to the trust property's earnings, avails and proceeds) are truly the "real parties in interest." That poses at least the question whether a land trust agreement is an "express trust" for Rule 17(a) purposes, so as to permit Trustee to sue in its own name. No answer to that question is essayed by this opinion.

**5.** This Court had, before the Supreme Court spoke to the issue in the *Sedima* case discussed

a bit later in the text, often cautioned counsel that for RICO purposes two mailings do not a "pattern" make, just as "One swallow never makes a summer," Cervantes, *Don Quixote*, pt. 1, bk. 2, ch. 4 (though the original version, from Aristotle, *Nichomachean Ethics I*, spoke of "spring" rather than "summer"). In light of the stress *Sedima* places on the "pattern" issue, this Court addresses it here sua sponte.

**6.** Dismissal of Inryco from the RICO count—the only federal claim in the Complaint—would make it purely a pendent party as to the state law claims against it and the other defendants. Though that does not entirely foreclose the possibility of keeping Inryco in the case, see *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984), it must be recognized that the

grounds will also be discussed briefly, against the possibility Trustee may be able to cure the "pattern" defect in the Complaint.

### Lack of a Pattern of Racketeering Activity

Section 1962(c) renders unlawful the conduct, "though a pattern of racketeering activity," of the affairs of an enterprise engaged in, or whose activities affect, interstate commerce. Sections 1962(a) and (b) define other RICO-prohibited activities, each of which also shares the common thread of a "pattern of racketeering activity." Section 1961(1) defines "racketeering activity" as any of a large number of specified illegal acts, including "any act which is indictable under ... [18 U.S.C.] section 1341 (relating to mail fraud)." Finally, Section 1961(5) is the only RICO provision that speaks at all to the concept of a "pattern":

"[P]attern of racketeering" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

At least until recently, commentators and courts have differed in their readings of "pattern" for RICO purposes. Some courts have taken the position that *any* two acts of racketeering by the same enterprise, no matter how unrelated, establish the requisite pattern. *United States v. Weisman,* 624 F.2d 1118, 1122–23 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); *United States v. Bright,* 630 F.2d 804, 830 n. 47 (5th Cir.1980). By contrast other courts, including our own Court of Appeals, have applied some such requirement of relatedness as this (*United States v. Stofsky,* 409 F.Supp. 609, 614 (S.D.N.Y.1973), *aff'd on other grounds,*

527 F.2d 237 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976)):

[R]acketeering acts must have been connected with each other by some common scheme, plan or motive so as to constitute a pattern and not simply a series of disconnected acts.

See *United States v. Starnes,* 644 F.2d 673, 677–78 (7th Cir.1981), which held acts taken in furtherance of a single criminal end are sufficiently related to satisfy the "pattern" requirement. *Starnes,* 644 F.2d at 678, like the same court's earlier decision in *United States v. Weatherspoon,* 581 F.2d 595, 601–02 (7th Cir.1978), rejected the contention that constituent acts do not form a pattern unless they are performed in the course of separate criminal events.

In logical terms, such cases as *Starnes* and *Weatherspoon* were only partly right in fleshing out the concept of "pattern." True enough, "pattern" connotes similarity, hence the cases' proper emphasis on relatedness of the constituent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn.1975) (emphasis in original) made precisely that point in urging both logic and RICO's legislative history require a showing of similar racketeering acts occurring in *different* criminal episodes:

Three issues arise in considering whether Count 8 states an offense. The first is whether the statutory requirement of a "pattern of racketeering activity" is adequately alleged by an allegation of two acts that occurred in the course of a single criminal episode.

proof problems against Inryco on those state claims (closely related to what Trustee would have to prove to support RICO jurisdiction) are substantially more expansive than this Court would have to confront against the co-defend-

ants. This Court therefore dismisses Inryco from the Complaint in its entirety. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Were the question open, I would have seriously doubted whether the word "pattern" as used in § 1962(c) should be construed to mean two acts occurring at the same place on the same day in the course of the same criminal episode. While the statutory definition makes clear that a pattern can consist of only two acts, I would have thought the common sense interpretation of the word "pattern" implies acts occurring in *different criminal episodes*, episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity. I would further have thought that the normal canon of narrowly construing penal statutes points toward such an interpretation. Finally, I would have thought the legislative history made such an interpretation clear. Thus, the Senate Report explains:

> The concept of "pattern" is essential to the operation of the statute.... The target of Title IX is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of *continuing* activity to be effective. It is this factor of *continuity* plus relationship which combines to produce a pattern. S.Rep. 91–617, 91st Cong., 1st Sess. 158. (Emphasis added).

It is difficult to see how the threat of continuing activity stressed in the Senate Report could be established by a single criminal episode.

*Moeller*'s analysis was mere dictum. District Judge Newman was foreclosed from applying the rule he advocated because the Court of Appeals for the Second Circuit, like our own Court of Appeals, had previously ruled a pattern could be shown by acts constituting a single criminal transaction. *United States v. Parness*, 503 F.2d 430, 441–42 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). But *Moeller* has now been vindicated, and such cases as *Starnes* and *Parness* have been vitiated by the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

To be sure, *Sedima,* 105 S.Ct. at 3285 n. 14 and 3287 also spoke in dictum. But its message was both plain and deliberate: Lower courts concerned about RICO's expansive potential would be best advised to focus on the hitherto largely ignored "pattern" concept. As *Sedima,* 105 S.Ct. at 3287 put it:

> The "extraordinary" uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of "pattern."

And the flaw in other courts' prevalent approach to that subject was their mistaken assumption that any two acts automatically spell out a pattern. Note 14 of *Sedima* quoted the selfsame language from the Senate Report as had *Moeller,* also to stress that a "pattern" cannot be established without "continuity plus relationship." And note 14 emphasized the "continuity" point by stating more than once RICO is not aimed at the isolated offense:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a

pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

It is profitable to focus the analysis by a fresh look at *Weatherspoon* in light of *Sedima.* In the former case, our Court of Appeals properly rejected (581 F.2d at 601) defendant's argument that "there was only one 'act' of racketeering activity because all of the mailings which formed the basis for the mail fraud counts were in furtherance of a single scheme to defraud." *Weatherspoon* parsed the statute and authorities to hold (again properly) the five mailings in furtherance of that single scheme, comprising five separate acts of mail fraud, were also five acts of "racketeering activity" (*id.* at 601–02). But it jumped the tracks when it elided the separate statutory requirement of a "pattern" by simply equating multiple acts with that requirement (*id.*):

> As a consequence, she engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(5), 1962(c) because she committed two or more acts of "racketeering activity."

That non sequitur will no longer wash, in light of *Sedima*'s proper emphasis on "pattern" as an independent component of a RICO claim under the plain language of the statute.

■ *Sedima* thus clearly creates a whole new ballgame. With such an unmistakable signal from the Supreme Court, this Court is no longer obligated to follow contrary Court of Appeals opinions. Although Trustee's "pattern" allegations satisfied the approach taken in *Starnes* and *Weatherspoon*, they clearly fail to satisfy *Sedima*'s "continuity plus relationship" formulation. Complaint ¶ 10 states simply:

> The pattern of racketeering activity in which defendants engaged includes two or more acts enumerated in 18 U.S.C. § 1961, including two or more acts of mail fraud as hereinafter described.

Complaint ¶ 16 then specifies two mailings that were made in connection with the Inryco-Century subcontract and the kickbacks to Ranke. Both logic and *Sedima* compel the conclusion that the two specified acts—Inryco's mailing the subcontract to Century and Century's mailing a kickback check to Ranke—fail to establish a "pattern of racketeering activity."

■ This Court is itself normally loath to indulge in dictum. But in this case the prospect of Trustee's possible repleading invites that treatment—and after all, in light of *Sedima* this Court could scarcely find itself in more respectable company. It merits observing that even if the three added kickback payments alleged in Complaint ¶ 15 involved the use of the mails, they still implemented the *same* fraudulent scheme as the first two mailings—and the single scheme does not appear to represent the necessary "pattern of racketeering activity."

That prospect however is for the future. For the present, Inryco is plainly entitled to dismissal from Count I. Despite that dismissal, this opinion continues to deal briefly with other issues for the reasons already explained.

*Proximate Causation*

■ Section 1964(c) requires that a RICO plaintiff be injured "by reason of" a violation of Section 1962. *Haroco v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd per curiam,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) explained the proximate cause requirement that language denotes:

> This holding by no means renders superfluous the requirement in section 1964(c) that the plaintiff be injured "by reason of" a violation of section 1962. As we read this "by reason of" language, it simply imposes a proximate cause requirement on plaintiffs. The criminal conduct in violation of section 1962 must, directly or indirectly, have injured the plaintiff's business or property. A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured. This causation requirement might not be subtle, elegant or imaginative, but we believe it is based on a straightforward reading of the statute as Congress intended it to be read.

That reading was confirmed by the Supreme Court in *Sedima,* 105 S.Ct. at 3286 n. 15, and in its *Haroco* affirmance, 105 S.Ct. at 3292.

Inryco argues the Complaint fails to indicate such a causal nexus between the kickbacks and Century's faulty concrete work. But on the current motion reasonable inferences must be drawn from the Complaint in Trustee's favor, despite the anomaly of ascribing to Inryco a scheme that by definition took dollars out of its pocket.[7] And from a perspective most favorable to Trustee, the realities of construction subcontracting support an inference the fraud contributed to Century's poor workmanship.

Inryco's profit as a general contractor depended directly on its ability to obtain subcontracted work from competent subcontractors for the lowest possible price. It is certainly reasonable to assume—in the absence of unusual circumstances such as bid-rigging (see n. 7)—Century's successful bid represented a fair price for performing the concrete work required by Trustee's specifications.[8] And if that is so, Century's having kicked back over a quarter of a million dollars to Ranke—a large sum whatever the size of the project[9]—might well have depleted Century's funds to the point where Century was unable to perform the concrete work either completely or properly. If it is assumed Inryco knew of the fraud, it must also be assumed it knew of that potential impact on Trustee.

*Inryco's Culpability (or Lack of It)*

■ But because Trustee must now decide whether to reinsert Inryco (perhaps

---

7. There is no hint in the Complaint the overall construction contract figure was somehow inflated to accommodate the kickback component of the concrete subcontract (nor does it indicate whether there had been competitive bidding or a negotiated contract, or anything else about the letting of the contract). But whether or not the aggregate amount was inflated, Inryco apparently had the contract at a fixed price (the clear implication of ¶ 14(a)'s reference to an "extra work order"). Every dollar paid to Century and used for purposes other than legitimate construction (except to the extent if any the cost was passed on to Trustee as an "extra" approved by it) was a direct added cost to Inryco, reducing its retained amount covering overhead and profit. And it is at least equally bizarre to accept the notion Inryco, obligated as it was to deliver the completed Project in accordance with the plans and specifications, would deliberately create the likelihood that an important subcontract such as concrete work would be defective because money was siphoned off (to its knowledge) from legitimate construction to illegitimate kickbacks. We need not subscribe to the proposition that all men universally act as rational economic beings to recognize the unlikelihood of such self-inflicted wounds, which would both impoverish a general contractor and expose it to large claims by the property owner.

8. It is obvious that every assumption in this area is capable of cutting both ways in terms of Trustee's claim. For purposes of the current analysis, the inference in the text is most favorable to Trustee.

9. Nothing in the Complaint suggests either the total Project price or the dollar amount of Century's concrete subcontract.

the only deep pocket among the defendants) into this lawsuit, a further word is in order. Precisely the same construction-world realities that—taken most favorably to Trustee—support an inference of proximate causation also militate against the possibility Inryco itself participated in the fraud. After all, as n. 7 reflects:

1. Inryco's knowing acceptance of a padded bid by Century would amount to its deliberately handing over its profits to Century and Ranke—surely a preposterous suggestion.

2. Inryco's knowing approval of kickbacks that would render Century financially incapable of workmanlike performance is equally remote. It is Inryco, not the subcontractors, that is contractually answerable to Trustee for any deficiencies in the construction work.

In short, it is far more logical (as Inryco urges) that Inryco was the principal victim rather than the perpetrator of the fraud. If so, Inryco would hardly appear to be an appropriate RICO defendant.[10] *Haroco*, 747 F.2d at 400–01, specifically approving this Court's analysis in *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982).

 In light of the current disposition on "pattern" grounds, no opinion is expressed here as to the overall legal sufficiency of Trustee's seeking to hold Inryco liable under RICO via agency principles for Ranke's acts of fraud. Again, though, the prospect of Trustee's repleading in an effort to reinstate a claim against Inryco justifies a comment or two:

1. Respondeat superior is clearly an insufficient basis for liability under RICO. *Parnes*, 548 F.Supp. at 24 n. 9 is one of a number of cases so holding; and

see *Haroco*, 747 F.2d at 401. Indeed Trustee Mem. 4 specifically acknowledges that.

2. Trustee's "ratification" allegations (¶ 18(d)) and "recklessness" allegations (¶¶ 12(b) and (c) and 18(a) and (b)) are far too vague to support either of the agency theories proposed by Trustee (in an effort to retreat from its no-respondeat-superior admission).

It would unduly (and unnecessarily) lengthen this opinion to engage in further analysis of Inryco's posture. Although other matters could be adduced, enough has been said to indicate Trustee and its counsel will be well advised to bear in mind their obligations under Rule 11 before they opt to include Inryco in an amended RICO complaint.[11]

*Conclusion*

Count I's RICO allegations fail to state a cause of action against Inryco. Accordingly Inryco must be dismissed from Count I, and in the exercise of this Court's discretion it dismisses Inryco from the pendent state law claims.[12] By definition such dismissal is without prejudice, but Trustee is cautioned to consider the caveats in this opinion.

---

**10.** Inryco's position as a victim of the fraud casts considerable doubt—to say the least—on Trustee's allegations Inryco conspired with and formed an "enterprise" with the other defendants.

**11.** Because this action remains pending against the defendants who appear clearly culpable (Trustee Mem. 2 advises Ranke and D'Angelo were indicted for mail fraud, pleaded nolo contendere and were sentenced), Trustee may have

ample opportunity through discovery to conduct the "reasonable inquiry" mandated by Rule 11.

**12.** No opinion is expressed as to whether the "pattern" problem also infects Trustee's claim against the other defendants. This Court has no way of knowing, for example, whether the kickback scheme was a sport or a regular way for Century and D'Angelo to do "business."