Lawrence A. ZAHRA and Patricia A. Zahra, Plaintiffs,

v.

Stanley L. CHARLES, Defendant.

Civ. A. No. 85 74268.

United States District Court,
E.D. Michigan, S.D.

July 23, 1986.

Terrence B. Larkin, Robert B. Brower, Detroit, Mich., for plaintiff.

Alan C. Harnisch, Kenneth B. Morgan, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILLIP PRATT, Chief Judge.

This suit is an attempt by the plaintiff investors, Lawrence and Patricia Zahra, to recover monies allegedly owed them by the defendant, Stanley Charles. Between 1977 and 1984, the defendant obtained over $40,000 from the plaintiffs, the consideration being several promissory notes with a maturity date of 30 days, and an annualized interest rate of apparently well over 50%. On December 7, 1985 this court granted partial summary judgment to the plaintiffs of $106,927.00. On March 6, 1986, the defendant's motion to modify the order of partial summary judgment and for leave to file an amended answer was granted, with the amount of judgment reduced to $13,499.00. The defendant now moves for partial summary judgment, seeking dismissal of Counts Two, Three and Four.

■ Count Two alleges violations of Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78a *et. seq.* 15 U.S.C. § 78c(a)(10) states that notes which have a maturity at time of issuance of less than nine months are not securities covered by the act. The question of whether a given instrument is a security is ultimately an issue of law, though disputed issues of fact might have to go to the jury. *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252 (9th Cir.1976). Courts have declined to construe this definition literally, and have subjected notes to the anti-fraud provisions of the 1934 Act regardless of maturity-length where they were investment, not commercial, in nature. *American Bank & Trust Co. v. Wallace*, 702 F.2d 93 (6th Cir.1983); *S.E.C. v. American Bd. of Trade, Inc.*, 751 F.2d 529 (2d. Cir.1984); *Sanders v. John Nuveen & Co.*, 463 F.2d 1075 (7th Cir.1972); *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466 (N.D.Ill. 1985); *See, Anno.,* Promissory Notes as Securities, 39 A.L.R. Fed. 357; *Anno.,* Security-"Risk Capital" Test, 68 A.L.R. Fed. 89. Applying the "commercial-investment dichotomy" used by the Third, Fifth, Seventh and Tenth Circuits, "[t]he ultimate question is whether the plaintiffs are simply borrowers in a commercial transaction who are not protected by the 1934 Act or investors in a securities transaction who are protected." *C.N.S. Enterprises, Inc. v. G. & G. Enterprises, Inc.*, 508 F.2d 1354 (7th Cir.1975), *cert. denied,* 423 U.S. 825,

96 S.Ct. 38, 46 L.Ed.2d 40. The Second Circuit has held that to enjoy the nine-month exemption, the instrument must be "prime quality negotiable commercial paper of a type not ordinarily purchased by the general public, that is, paper issued to facilitate well recognized types of current operational business requirements and of a type eligible for discounting by Federal Reserve Banks." *American Bd. of Trade*, 751 F.2d at 538–39. No evidence has been submitted, other than the notes themselves, that would allow this court to determine whether the transactions at issue in this case were commercial in nature, or were investments such that they would be covered by the 1934 Act regardless of maturity date. Accordingly, the motion to dismiss Count Two is denied.

■■■ Count Three alleges that the defendant either intentionally or negligently misrepresented this "investment opportunity" to the plaintiffs, in violation of Michigan law. An action for fraud must be predicated on a statement relating to a past and present fact, and the mere failure to perform a promise generally does not give rise to an action in tort. *Hi-Way Motor Co. v. International Harvester*, 398 Mich. 330, 247 N.W.2d 813 (1976); *Eaton Corp. v. Easton Associates, Inc.*, 728 F.2d 285 (6th Cir.1984). However, a future promise may form the basis for a claim of fraud if it can be shown that at the time the promise was made there was no intent to perform it. *Higgins v. Lawrence, P.C.*, 107 Mich.App. 178, 185, 309 N.W.2d 194 (1981). Thus Count Three does properly state a cause of action making dismissal pursuant to F.R.Civ.P. 12(c) inappropriate, and there is no record before the court that would allow it to summarily determine the issue pursuant to F.R.Civ.P. 56. The defendant's motion as to Count Three is denied.

■■■ Count Four alleges that the defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.* To state a civil cause of action under RICO, the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of "racketeering activity" which has caused injury to the plaintiff. *Sedima, S.P.R.I. v. Imbex Co., Inc.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). On its face, the plaintiffs' complaint appears to have met only the first and fourth of these elements.[1] The Supreme Court has held that to establish an enterprise under 18 U.S.C. §§ 1961(4) and 1962(c), there must be evidence that the defendants function as a "continuing unit," and that the enterprise must have an existence "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). Count Four does not even allege that an enterprise existed or exists. Even if such an allegation had been made, the court notes that the defendant could not be both a "person" and an "enterprise" so as to violate 18 U.S.C. § 1962(c), as he is merely a single individual. *See, e.g. McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985).

The other element which poses a problem in this case is that the plaintiff must allege that the defendants engaged in a *pattern* of racketeering activity. 18 U.S.C. § 1961(5) says that a pattern "requires at least two acts of racketeering activity, one of which occurred within ten years … after the commission of a prior act of racketeering activity." In a rather lengthy footnote, the Supreme Court has invited courts to develop rigorous standards for what constitutes a pattern of racketeering activity.

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pat-

---

1. The court treated the motion to dismiss Count Four as one on the pleadings pursuant to F.R. Civ.P. 12(c), the court not having considered any submissions outside of the pleadings.

tern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO not aimed at the isolated offender); House Hearings at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguising characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.ed.ed 616 (1975).

*Sedima, S.P.R.I. v. Imbex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346.[2] Many lower courts have accepted the Supreme Court's invitation, and have held that where the predicate acts all occurred in the course of a single scheme to defraud the victim, a pattern of racketeering activity had not been established. *Northern Trust Bank/O'Hare, N.A. v. Inrycon, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985);

*Professional Assets Manage. v. Penn Square Bank,* 616 F.Supp. 1418 (D.Okla. 1985); *Allington v. Carpenter,* 619 F.Supp. 474 (D.Cal.1985); *Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198 (S.D.N.Y.1986); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, (8th Cir. 1986).

 The requirement that the predicate acts must have occurred in different criminal episodes is consistent with Congress' intent to exclude isolated criminal conduct from RICO liability. *See Sedima,* 105 S.Ct. at 3285 n. 14. While it is true that Congress intended RICO to reach both legitimate and illegitimate enterprises, *Id.,* RICO ought not be used as a basis for federal question jurisdiction in every "garden variety" fraud case. As one court has noted, "[m]ost substantial business transactions involved two or more uses of the mail during negotiations." To hold that two such [acts] are sufficient to constitute a "pattern of racketeering activity" would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions." *Medallion T.V. Enterprises, Inc. v. SelecTV, Inc.,* 627 F.Supp. 1290 (D.C.Cal.1986). This interpretation is also consistent with the plain meaning of the word "pattern."

> True enough, "pattern" connotes similarity, hence the cases' proper emphasis on relatedness of the constitutent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Inryco,* 615 F.Supp. at 831. This court is persuaded by the reasoning of the post-*Sedima* courts adopting a rigorous definition of the term "pattern," and holds that

---

**2.** Prior to *Sedima,* most courts had concluded that a pattern could be established merely by showing the commission of two acts of racketeering activity within the last ten years. *See, e.g., United States v. Aleman,* 609 F.2d 298 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Parness,* 503 F.2d 430 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

separate acts in furtherance of the same criminal episode or transaction do not constitute a "pattern" of racketeering activity under RICO. Returning to the facts of this case, it is clear that the plaintiffs have alleged only one scheme, *viz.,* to borrow money from them without intending to pay it back. The conduct of the defendant, assuming all of the allegations of the complaint to be true, does not amount to a "pattern of racketeering activity."

■ The third deficiency of Count 4 is the failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). While courts differ on how strictly Rule 9(b) is to be applied, *see, e.g., Lewis v. Berry,* 101 F.R.D. 706 (W.D.Wash.1984), and there is no doubt that it must be applied in conjunction with the liberal pleading standards of Fed.R.Civ.P. 8, *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466 (N.D.Ill. 1985), the plaintiff must at least provide the defendant with a "brief sketch" of the alleged scheme, outlining the time, place, method, and participants. In this case, the plaintiffs have not even approached this standard, having made their allegations in the most perfunctory manner. In sum, because the plaintiffs failed to plead two essential elements of a RICO claim and, because of their failure to plead fraud with particularity, the defendant's motion to dismiss Count 4 is granted.

The plaintiffs have also moved for partial summary judgment as to Count One, seeking to have the amount of the judgment on that claim increased from $13,499 to $26,377.01. The basis for the request for the additional $12,878.01 is the allegation that the defendant's alleged agent, John Cozzo, allegedly induced the plaintiffs to pay that amount to one Linda Brubacker, to whom it is claimed the defendant also owed money. The argument is that this transaction reduced the defendant's indebtedness to Brubaker by $12,878.01 and increased the defendant's indebtedness to the plaintiffs by the same amount.

This motion is supported by two affidavits. Brubacker states that she understood from an agent of the defendant that the plaintiffs' checks to her were in partial repayment of the defendant's debt to her.

John Cozzo states that he acted at the defendant's request and as his agent in this transaction, which he says was designed to reduce the defendant's indebtedness to Brubacker and increase the amount owed the plaintiffs. The defendant has not responded with any affidavits which would dispute the allegations in the affidavits of Brubacker and Cozzo. It is well settled that to avoid summary judgment, the opposing party cannot rest on mere allegations. *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1967). The opponent must set forth *specific facts* showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby,* —— U.S. ——, ——, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (June 25, 1986); *Davis v. Robbs, et. al.,* 794 F.2d 1129 (6th Cir. July 9, 1986). The defendant has not made any attempt to show that there are contested issues of fact, and the court accordingly grants the plaintiffs' motion for a judgment of an additional $12,878.01 on Count One.

The plaintiffs also move for summary judgment for an additional $12,108, the claim based upon the following facts. The defendant admits to having received money from the plaintiffs on the following dates:

| | |
|---|---|
| October 26, 1977 | $ 2,000.00 |
| March 28, 1981 | 20,000.00 |
| May 28, 1981 | 8,000.00 |
| January 26, 1982 | 7,000.00 |
| September 24, 1984 | 8,000.00 |
| Total | $45,000.00 |

He admits to having repaid the plaintiffs $31,501.00, $12,108 of that being paid back by May 2, 1980. While the defendant admits an outstanding indebtedness of $13,499, he claims that the balance of the over one hundred thousand dollars ($100,000.00) the plaintiffs claim he owes them is, in reality, a claim for usurious interest in violation of Michigan law. M.C.L. § 438.31 *et. seq.* The plaintiffs argue that he has waived his usury defense as to the $12,108.00 paid up to May 2, 1980.

■ Where a lender seeks to enforce a usurious contract, the borrower may

have all the usurious interest he previously paid applied against any outstanding debt. *Waldorf v. Zinberg*, 106 Mich.App. 159, 307 N.W.2d 749 (1981). However, where the borrower has voluntarily satisfied the entire obligation or at least an amount over the principal amount, the lender is entitled to retain the usurious interest paid. *Osinski v. Yowell*, 135 Mich.App. 279, 287–88, 354 N.W.2d 318 (1984); *Lenart v. Ragsdale*, 148 Mich.App. 571, 581, 385 N.W.2d 282 (1986). The plaintiffs argue that each note was a discrete obligation, and that the $12,108 payments related only to the $2,000 note of October 26, 1977. Thus, the obligation was either entirely satisfied by the defendant or a significant amount over the principal was voluntarily satisfied. This issue is not ripe for summary disposition. It is unclear from the evidence whether each note was a discreet transaction to be satisfied independently, or whether all the dealings between the parties which led to the exchange of $45,000 for the notes over a period of years should be viewed as one transaction. If the latter recitation turns out to be correct, then the defendant did not waive his usury defense by repaying the $12,108.00. Without expressing an opinion on the ultimate resolution of this dispute, the plaintiff's motion for summary judgment to seek $12,108.00 is denied.

Finally, the plaintiff moves to have the partial judgment of $26,377.01 certified as a final judgment pursuant to Fed.R. Civ.P. 54(b). There has been no showing that this is the "infrequent harsh case" which merits certification. *Solomon v. Aetna Auto Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir.1986). The request for certification is denied.

Accordingly, the court grants in part and denies in part the defendant's motion for summary judgment, dismissing Count Four. The plaintiffs' motion for partial summary judgment is also granted in part and denied in part, with a judgment of an additional $12,878.01 being entered against the defendant, for a total now of $26,-377.01. The request for certification is also denied.

IT IS SO ORDERED.