**MILLERS COVE ENERGY COMPANY, INC., a Michigan corporation, Plaintiff/Counter-Defendant,**

v.

**DOMESTIC ENERGY SERVICE COMPANY, a Delaware corporation, Defendant/Counter-Plaintiff.**

**Civ. A. No. 85–72116.**

United States District Court, E.D. Michigan, Southern Division.

Oct. 24, 1986.

Dennis B. Schultz, Butzel, Long & Van Zile, Detroit, Mich., for plaintiff/counter-defendant.

Dennis M. Haffey, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant/counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Millers Cove Energy Company ("plaintiff" or "MC Energy") and Domestic Energy Service Company ("defendant" or "DESCO") launched a coal mining venture on March 28, 1980. DESCO supplied $600,-000 cash and a $630,000 note to MC Energy; it received in return a twenty percent income interest in the venture. The relationship between the parties steadily deteriorated as the venture operated without producing any income for DESCO. Plaintiff filed suit on May 13, 1985 seeking judgment terminating the relationship, declaring the rights and obligations of the

parties, and awarding damages. Defendant counterclaimed on July 17, 1985 for monetary and equitable relief. Defendant moves for leave to add a counterclaim under Title IX of the Organized Crime Control Act of 1970 (commonly known as the Racketeer Influenced and Corrupt Organizations Act, or "RICO"), 18 U.S.C. §§ 1961–1968.[1]

RICO liability is predicated on a "pattern of racketeering activity," 18 U.S.C. § 1962(a)–(c), which "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). DESCO complains of only one commercial venture and attempts to meet the pattern requirement by alleging that MC Energy perpetrated several distinct mail and wire frauds during the venture. This attempt to transform one unsuccessful investment into a RICO claim flouts the purpose of Congress in enacting RICO "to seek eradication of organized crime in the United States ... [and] to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub.L. No. 91–452, 1970 U.S. Code Cong. & Ad.News 1073 (84 Stat. 922, 923). The statute "requires more than a single episode of racketeering activity even if the episode consists of more than one indictable act." *See The Coast Guard Academy Foundation v. The Evening News Association,* 642 F.Supp. 860 (E.D. Mich.1986) (Feikens, J.).

In *Sedima v. Imrex,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court invited a rigorous interpretation and application of the pattern requirement:

> The implication [of RICO's definition of a "pattern of racketeering activity"] is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern."

Courts have accepted the invitation. In *Modern Settings v. Prudential-Bache Securities,* 629 F.Supp. 860, 864 (S.D.N.Y.

---

1. Defendant's motion also seeks to add two additional counterclaims and four additional counter-defendants. I do not now consider these aspects of the motion.

1986), the Court refused to turn a single disappointing investment into a RICO case:

> Plaintiffs insist that this liquidation—consisting of the sale of various government-backed mortgage instruments and other securities—constitutes a "pattern of racketeering activity" [but] we have no difficulty in finding that this single episode of fraud ... is no pattern. Each of the multiple sales involved in the liquidation may indeed violate the securities laws; however, each is but part of a single transaction.
>
> ... There is no pattern of racketeering activity in the liquidation alone, regardless of the number of sales required to consummate it.

*See also Superior Oil v. Fulmer,* 785 F.2d 252, 254–257 (8th Cir.1986) (reversing RICO judgment for plaintiffs where predicate acts proved were all part of a single fraudulent scheme); *Northern Trust Bank v. Inryco,* 615 F.Supp. 828, 831 (N.D.Ill.1985) (allegation of two mailings pursuant to a single scheme fails to state a RICO claim because " 'pattern' ... presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity.") (emphasis original); *McIntyre's Mini Computer Sales Group v. Creative Synergy,* 644 F.Supp. 580, 584 (E.D.Mich.1986) (Pratt, C.J.) (dismissing RICO claim where alleged predicate acts were all part of "the same criminal episode or transaction."); *Zahra v. Charles,* 639 F.Supp. 1405, 1408 (E.D.Mich.1986) (Pratt, C.J.) (same). *But cf. R.A.G.S. Couture v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985) (after noting that district court did not consider the issue, and without considering whether the alleged predicate acts were part of a single scheme, the court states that two allegedly fraudulent mailings can form a RICO pattern).[2]

Accordingly, DESCO's motion for leave to add a RICO counterclaim is DENIED. *See Neighborhood Development v. Advisory Council,* 632 F.2d 21, 23 (6th Cir.1980)

("[T]he district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss."); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1487, at 433 n. 58 (1971 & Supp.1986).

IT IS SO ORDERED.

---

**2.** Several courts have criticized or rejected *R.A. G.S. See Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 n. 3 (N.D.Ill.1985); *Soper v. Simmons International,* 632 F.Supp. 244, 250–254 (S.D.N. Y.1986); *Torwest DBC v. Dick,* 628 F.Supp. 163, 167 (D.Colo.1986).