NATIONAL BUSINESS FUNDING,
INC., Plaintiff,

v.

CUSTOM MUFFLER SPECIALISTS,
INC., et al., Defendants.

Civ. No. 85CV70956DT.

United States District Court,
E.D. Michigan, S.D.

March 19, 1987.

Eric J. McCann, Bloomfield Hills, Mich., for plaintiff.

Rodger D. Young, Southfield, Mich., for defendants.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

Plaintiff commenced this action in March 1986 alleging breach of contract, common law fraud and violations of RICO, 18 U.S.C. § 1962. Jurisdiction is apparently based on diversity of citizenship as well as federal question, although jurisdiction is not well plead in the complaint. Defendants answered and counterclaimed for breach of contract. Defendants now seek dismissal of the RICO claim for failure to state a claim and summary judgment on the fraud claim. They also seek to amend the counterclaim.

The facts of this case have not been well developed in the record and neither party has submitted an affidavit on this motion.

Plaintiff alleges that defendant Philo contacted it by telephone to find out whether plaintiff would be willing to finance defendant's sale of its pipe bender machine through a leasing arrangement. Defendant represented to plaintiff that it manufactured the machines and that they were worth $15,900. Defendant also agreed, plaintiff contends, to supply inventory for the machines after the sale. Plaintiff agreed to finance, through leasing, the sale of defendant's machines, and to pay defendant a 4% commission on each deal.

Plaintiff alleges that after it financed a number of sales, it discovered that defendant does not manufacture the pipe bender but purchases it elsewhere for substantially less than $15,900. In addition, approximately $3,000 worth of inventory was included in the sale. Had plaintiff known this, it asserts, it would not have agreed to the financing arrangement. Finally, plaintiff claims that defendants have not supplied the inventory to enable the machines to operate properly. As a result, the ultimate purchasers/lessees of the machines have refused to make payments to plaintiff.

In their counterclaim, defendants assert that plaintiff has failed to make payments due under their financing/leasing arrangement. Although defendants initially alleged that $8,000 was owing, they now seek to amend the counterclaim to change that amount to $39,000.

Defendants now seek dismissal or summary judgment on two counts of the complaint, arguing that plaintiff has failed to adequately allege a "pattern" under RICO and has failed to show that it investigated defendants' representations, which is necessary for the fraud claim. Defendants have not submitted any affidavits in support of their motion. Plaintiff has failed to respond to the motion.

A motion to dismiss under Rule 12(b)(6) should be granted when the plaintiff is not entitled to relief under the facts stated in the complaint. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). To state a civil claim under RICO, plaintiff must allege 1) conduct, 2) of an enterprise,

3) through a pattern, 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiff has alleged that defendant made materially false and misleading representations to it during interstate telephone calls and through the mails. Defendants contend that even if these allegations are taken as true, plaintiff has alleged only one scheme to defraud, which does not state a claim under RICO.

■ The Supreme Court in *Sedima* rejected the contention that plaintiff in a civil RICO action must plead a certain type of "rackeetering" injury. The Court did not decide whether a pattern had been adequately alleged in the case before it, but devoted an extensive footnote to the meaning of the term pattern, stressing that two or more acts of racketeering alone do not establish a pattern; the factors of continuity and relationship must also be present. *Id.*, 105 S.Ct. at 3285 n. 14. Relatedness is established through proof of common perpetrators or victims, or similar purposes, methods of commission or results. *Id.* To demonstrate continuity, plaintiffs must show that the predicate acts occurred in different criminal episodes. *Id.; Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986). *See also Medallion TV Enterprises v. SelecTV of California*, 627 F.Supp. 1290, 1296 (C.D.Cal.1986); *Zahra v. Charles*, 639 F.Supp. 1405 (E.D.Mich. 1986); *Northwest Trust Bank/O'Hare, N.A. v. Inyrco*, 615 F.Supp. 828 (N.D.Ill. 1985).

■ Several courts have concluded that in light of *Sedima*, allegations concerning a single criminal scheme are insufficient to state a claim under RICO. *See Superior Oil*, 785 F.2d at 257; *Medallion TV*, 627 F.Supp. at 1296; *Zahra*, 639 F.Supp. at 1408–09; *Northwest Trust*, 615 F.Supp. at 832. *See also Professional Assets Management Inc. v. Penn Square Bank*, 616 F.Supp. 1418 (W.D.Okl.1985). Although plaintiff in the instant case has alleged separate criminal acts, those acts were all in furtherance of one alleged scheme, i.e., the alleged scheme to defraud plaintiff by misrepresenting the value and

source of the machines. This case is similar to *Superior Oil*, where defendants allegedly removed gas from a pipeline on numerous occasions without paying for it. 785 F.2d at 257. It is also similar to *Zahra*, where defendant borrowed money from plaintiffs on at least four occasions, without intending to repay it. In each of these cases, the court dismissed the RICO counts, holding that repeated acts in furtherance of one criminal episode did not constitute a "pattern." We agree with the reasoning of those courts. Plaintiff has failed to state a claim under RICO.

Defendants also seek dismissal of the fraud count, essentially arguing that plaintiff was required to allege that it investigated and analyzed defendant's alleged misrepresentations. Defendants rely primarily upon *North American Financial Group v. S.M.R. Enterprises*, 583 F.Supp. 691 (N.D.Ill.1984), where the court held that plaintiff had failed to state a fraud claim because, among other things, it had failed to investigate the defendant's fraudulent misrepresentations. In *North American*, the court noted that plaintiff was a sophisticated investor and that "the process of finding investment opportunities or capital for itself or others must include the investigation and analysis of the prospective venture." *Id.* at 698. The court also based its decision on the fact that plaintiff clearly did not rely on the misrepresentations because it sought specific performance of the deal even after it knew the truth. Finally, the court appeared to base its decision on a complete record.

Plaintiff in this case pleaded the essential elements of fraud; i.e., knowing misrepresentations intended to mislead, upon which plaintiff relied, and damages. Plaintiff did not allege specific facts indicating that it investigated defendants' representations. Defendants contend that plaintiff accepted their alleged representations without ever having met them or having seen their facilities, and thus had no right to rely. Under Michigan law, however, it appears that plaintiff need only allege reliance not necessarily the right to rely. *See Eaton Corp. v. Easton Associ-*

*ates*, 728 F.2d 285 (6th Cir.1984). While plaintiff may later be charged with proving reasonable reliance, it has allegesd sufficient facts to avoid dismissal.

Defendants also move for summary judgment on the fraud count. Their motion, however, is unsupported by affidavit or other testimony. From the bare record before the court, it is impossible to conclude that plaintiff did not reasonably rely on defendants' representations.

The final matter before the court is defendants' untimely motion to amend the counterclaim to seek damages in the amount of $39,227.20 rather than $8,000. Federal Rules of Civil Procedure 15 permits amendment when the interest of justice requires and when there will be no prejudice to the opposing party. Plaintiff in this case claims that the amendment will require additional discovery and it is apparent that it will. Plaintiff would surely require discovery to determine which additional leases the counterclaim relies upon and the amount involved in the breach. It is clear that the counterclaim involves damages for breach of additional lease agreements. Amendment of the counterclaim, therefore, would appear to prejudice plaintiff.

NOW, THEREFORE, IT IS ORDERED that defendants' motion to dismiss count I of the complaint be and the same hereby is GRANTED;

IT IS FURTHER ORDERED that defendants' motion to dismiss count III of the complaint and to amend the counterclaim are DENIED.