**FOUR STAR CORPORATION, Ralph Mandarino, Plaintiffs,**

v.

**Henry J. CLINK, John A. Bott, and the John Bott Sales Corporation, Defendants.**

**Civ. No. 86–CV–71864–DT.**

United States District Court, E.D. Michigan, S.D.

July 9, 1987.

Lawrence R. Abramczyk, Donovan, Hammond, Ziegelman Roach & Sotiroff, Detroit, Mich., for plaintiffs.

Alan C. Harnisch, Seyburn, Smith, Bess, Howard, Kahn & Harnisch, P.C., Southfield, Mich., for Henry J. Clink.

Anthony Blaty, Miami, Fla., for John A. Bott.

Thomas P. Casey, Harper Woods, Mich., for Bott Sales Corp.

ORDER AND OPINION

COHN, District Judge.

I.

This case is brought pursuant to the Racketeer Influenced and Corrupt Orga-

nizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Plaintiff Four Star Corporation ("Four Star") manufactures and sells luggage racks for the auto industry. From 1976 to 1983, defendant Henry J. Clink was president of Four Star. Four Star claims defendants Jack Bott Sales Corporation and John A. Bott (collectively referred to as "Bott") bribed Clink so that Bott could be retained as a manufacturer's representative and thus receive sales commissions from Four Star while gaining knowledge of Four Star's operations.[1] Four Star says Clink thus caused its loss in a patent infringement action brought by Bott[2]—because Clink was receiving kickbacks from Bott, he allegedly did not develop a line of luggage racks that did not infringe on Bott's patents. As a result, Four Star's damages in the patent litigation were increased.[3] Four Star says the kickbacks constituted mail fraud and fraud in the sale of securities.[4] These are the RICO "predicate acts." Bott is the RICO "enterprise."[5]

Defendants move for dismissal, Fed.R. Civ.P. 12(b)(6), or summary judgment, Fed. R.Civ.P. 56. They raise eight grounds, one of which is the failure of plaintiffs to plead RICO's "pattern" requirement. 18 U.S.C. §§ 1961(5), 1962. For the reasons below,

defendant's motion to dismiss is GRANTED.[6]

## II.

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, 358 n. 14 (1985), the Supreme Court shed some light on RICO's "pattern" requirement. The Court noted that "while two acts are necessary, they may not be sufficient.... It is this factor of continuity plus relationship which combines to produce a pattern."

■ The Court of Appeals for the Sixth Circuit has not interpreted the "pattern" requirement. Several judges of this district have interpreted it narrowly to require that the criminal acts be in furtherance of more than one criminal scheme.[7] *See National Business Funding, Inc. v. Custom Muffler Specialists, Inc.,* 675 F.Supp. 1080 (E.D.Mich.1987); *In re Evening News Ass'n Tender Offer Litigation,* 642 F.Supp. 860 (E.D.Mich.1986); *Zahra v. Charles,* 639 F.Supp. 1405 (E.D.Mich.1986); *Barris v. Farmer,* slip op., No. 83–1873 (E.D.Mich. Nov. 17, 1986). I need not distinguish the decisions of my colleagues, at least under the circumstances of this case. In the wake of *Sedima,* it is clear that a case-by-case analysis of the facts in each case is appropriate to a determination of

---

1. Paragraph 12 of the complaint reads: "Commencing in at least 1976 and continuing through at least 1981, Bott and Bott Sales engaged in the payment of illegal kickbacks to Clink as a means of insuring Bott's and Bott Sales' continued retention as manufacturers representatives for Four Star.

2. *Bott v. Four Star Corp.,* 218 U.S.P.Q. 358 (E.D. Mich.1983) (liability), *aff'd without opinion,* 732 F.2d 168 (Fed.Cir.1984).

3. 229 U.S.P.Q. 241 (E.D.Mich.1985) (damages), *aff'd in relevant part,* 807 F.2d 1567 (Fed.Cir. 1986).

4. Plaintiff Ralph Mandarino is a shareholder of Four Star who acquired his interest from Clink on December 28, 1982. He alleges economic loss when Four Star's stock fell in value because of the above acts, which were not revealed to him until after he acquired his interest.

5. The complaint is ambiguous about the "enterprises." Paragraph 19 states that "[John] Bott

and/or Bott Sales ... fund[ed] several enterprises (collectively 'the Bott enterprises')." Paragraph 20 asserts that these enterprises were involved in the manufacture and sales of luggage racks, but no more precise characterization of these "enterprises" is provided.

6. This opinion will serve to memorialize my ruling on the motion at the hearing on June 10, 1987.

7. The cases use, often interchangeably, the terms "schemes," "episodes" and "acts," often without defining these terms. *Post–Sedima "Pattern" Litigation—Perusing Acts, Episodes, Schemes and Patterns,* 2 Civil RICO Report (BNA) 1, 2 & n. 2 (Nov. 5, 1986) (collecting cases). My understanding of the terms is described by the following hierarchy: an "act" is a discrete deed undertaken in furtherance of an "episode," which is a distinct criminal violation that is part of a larger "scheme" accomplished by several criminal violations. In other words, an "act" may stand alone, but a "scheme" is comprised of a series of episodes.

whether the "pattern" requirement has been satisfactorily pleaded. The outcome of this case does not depend on plaintiffs' failure to allege two separate criminal schemes.

Post–*Sedima* cases have tended to rely on a case from the Northern District of Illinois whose facts are almost on all fours with the case here. *Northern Trust Bank/O'Hare, N.A. v. Inryco,* 615 F.Supp. 828 (N.D.Ill.1985). *Inryco* noted, albeit in dictum, that a series of payments in furtherance of a single bribe did not satisfy the "pattern" requirement because the predicate acts of bribery were not in furtherance of separate criminal schemes.

While *Inryco* has not been explicitly overruled, the Seventh Circuit disagreed with the analysis of *Inryco* in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). Like several other circuits, *see Soper v. Simmons Int'l, Ltd.,* 632 F.Supp. 244, 250–55 (S.D.N.Y.1986) (discussing cases), the trend in the Seventh Circuit has been to broaden RICO's "pattern" pleading requirement. In *Morgan,* the Seventh Circuit held that the predicate acts need not "always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement...." *Id.* at 975–96. The test is whether the predicate acts "can fairly be viewed as constituting separate transactions, *i.e.,* 'transactions "somewhat separated in time and place." ' " *Id.* (citations omitted). The Seventh Circuit held that several acts of mail fraud constituted a "pattern" because they were distinct, some relating to separate foreclosure sales, while others were related to allegedly fraudulent statements made in connection with the original loan transaction involved there. However, the *Morgan* court rejected an interpretation of RICO that would always make two predicate acts sufficient to state a "pattern."

 Even if a single *scheme* is sufficient to allege a "pattern," such an approach does not require that every criminal *episode* implemented through two or more

"ministerial acts," *Soper, supra,* 632 F.Supp. at 254, be raised to the level of a RICO violation. The bribery payments here were merely part of a single criminal episode and not sufficiently distinct to fall within the analysis of *Morgan.* While plaintiffs have shown a "relationship" between the predicate acts, they have failed to allege "continuity" sufficient to form a "pattern." *See Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). The bribery scheme alleged here describes no more than a single fraudulent effort implemented by several fraudulent acts, with no threat of continuing criminal activity. It is doubtful "that Congress ever contemplated the extension of the RICO statute to include a situation where ... mail fraud claims essentially representing subdivisions of a single ongoing illegal act [could] meet the predicate requirements of so serious a statute." *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1189 (4th Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

All of this may be semantics. *See Post–Sedima "Pattern" Litigation, supra,* at 6 (quoting *Nortman v. Itex Energy Corp.,* No 84–C–421, slip op. at 5 (N.D.Ill. Aug. 26, 1986) (available on LEXIS, Genfed library, Dist file) [1986 WL 9564]). Like the late Justice Potter Stewart, *cf. Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (concurring opinion), I shall not today attempt further to define "pattern." But I think I know a "pattern" when I see it, and the bribery involved in this case is not that. *See Morgan, supra,* 804 F.2d at 977 (citing *Papai v. Cremosnisk,* 635 F.Supp. 1402, 1410 (N.D.Ill.1986)).[8]

SO ORDERED.

---

**8.** A search on WESTLAW reveals at least 14 cases that have recalled Justice Stewart's oft-cited despair at finding precise standards when they have analyzed the requirements of RICO. This "I know it when I see it" approach has been scorned by some courts but—given the paucity

of explicit congressional and higher court direction—such an approach may be a predictable way of charting a course through so choppy a see of diverse interpretations of the statute. The situation reminds one of Humpty Dumpty's frequently quoted statement, "When *I* use a word, it means just what I choose it to mean—neither more nor less." Lewis Carroll, *Through the Looking-Glass,* ch. 6.